**Robert Duane BORGEN, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 48236.**

Missouri Court of Appeals, Western District.

May 24, 1994.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

Charles M. Fitzgerald, Fitzgerald, Fitzgerald & Carter, Warrensburg, for respondent.

Before SMART, P.J., and LOWENSTEIN and FENNER, JJ.

PER CURIAM:

This appeal involves judicial review of the revocation of Robert Duane Borgen's driving privileges for refusing a chemical test for intoxication under § 577.041, RSMo Supp. 1992. After a hearing, the trial judge ordered reinstatement of Borgen's driving privileges. The Director of Revenue appeals. The judgment is reversed and the case is remanded.

On September 11, 1992, at approximately 11:30 p.m., Officer Matthew Vessar of Central Missouri State University observed Borgen driving a vehicle on a campus sidewalk. He instructed another officer to tell Borgen to back the vehicle down the sidewalk and to speak with Officer Vessar. Borgen had difficulty backing the vehicle. Upon coming into contact with Borgen, Officer Vessar detected an odor of intoxicants on Borgen's breath. He asked Borgen to step out of the vehicle and walk to the sidewalk area. Borgen complied, but used his side of the vehicle for balance. He said that he was having trouble walking.

Officer Vessar then requested Borgen to perform several field sobriety tests. He asked Borgen to recite the alphabet from C to Q. Borgen responded that he "couldn't do it." Officer Vessar then asked Borgen to recite the alphabet from A to Z. Borgen answered that "it had been a long time" and he could not remember it. Officer Vessar asked Borgen to count from three to thirty in threes. Borgen replied that it was too hard and he could not do it. Officer Vessar also asked Borgen to attempt the one-leg-stand

test. Borgen attempted the test twice and both times he swayed and "put his foot on the ground three times." Borgen also had trouble with the walk-and-turn test. After the tests, Officer Vessar arrested Borgen and transported him to the Johnson County Jail.

At the Johnson County Jail, Officer Agnitsch, who is certified to operate the breathalyzer machine, explained to Borgen the purpose of the breathalyzer test and the consequences if he decided not to take it. Before Borgen took the breathalyzer test, the officers allowed Borgen to consult Tom, a passenger in Borgen's vehicle at the time of the arrest. After the consultation, Borgen stated he would take the test and blow into the machine. However, Borgen never gave a strong steady sample of his breath. "He was only blowing short breaths." Borgen said he had emphysema. Officer Vessar testified that they allowed Borgen to attempt the breathalyzer test a second time. "When he couldn't do that, I asked him if he would take a blood test for me." Officer Vessar also warned Borgen that "[i]f you don't take this test, you will lose your license." Borgen responded that he wasn't "going to any doctor or hospital" and mentioned that he was afraid of needles.

Officer Vessar counted this response as a refusal. Approximately fifteen minutes later, he informed Tom and the other passenger that Borgen "would not take the blood test, that he had been refused on his test because he did not want to go to the hospital." The passengers then asked Officer Vessar whether they could talk to Borgen. Officer Vessar said, "that's fine," but maintained that Borgen "had been refused." After consulting with the passengers, Borgen stated he would take the blood test. Officer Vessar told Borgen that he had already been refused.

On October 21, 1992, the Director of Revenue issued a notice of revocation. Borgen timely filed a petition for review in the circuit court. At the hearing, the court granted Borgen's motion for judgment at the close of the Director's presentation of evidence. The trial court found the issues in favor of Borgen because "it appears as though he made an effort to blow, and then it appears as though he changed his mind and said he would in fact take a blood test despite whatever his problem was with needles, that's just the way I'm going to find this particular case under the facts." The judgment entry stated Borgen had not refused "to take the breathalyzer test" and set aside the order revoking Borgen's driving privilege.

In its only point, the Director claims that the trial court erred in setting aside the revocation of Borgen's license because the revocation was proper in that Borgen's "subsequent consent to submit to a test did not affect his initial refusal." For the purpose of this court's review, the issue is whether the Director made a prima facie showing that Borgen refused the blood test. If the Director did, the trial court erred in ruling in favor of Borgen at the end of the Director's presentation of evidence. If the Director did not, the case was correctly decided.

This court's standard of review is set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court's decision must be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law. *Id.* at 32. In this case, since Borgen's motion was granted at the close of the Director's case, our focus is on whether or not the trial court correctly applied the law in determining that there was no prima facie showing that Borgen had refused a test under § 577.-041 RSMo Supp.1992.

When reviewing the revocation of a driver's license for a refusal to submit to a chemical test, the trial court shall determine only the following: (1) whether the person was arrested; (2) whether the arresting officer had reasonable grounds to believe that the person was driving while intoxicated; and (3) whether the person refused to submit to the test. Section 577.041.2, RSMo Cum. Supp.1992; *Green v. Director of Revenue*, 745 S.W.2d 818, 820 (Mo.App.1988). If the trial court finds that one or more of these criteria has not been met, it is to order the reinstatement of driving privileges. Section 577.041.3, RSMo Cum.Supp.1992.

At issue in the case at bar is the third criteria, whether the Director made a prima facie showing that Borgen refused to submit

to a chemical test. The Director's evidence shows that Borgen consented to the breathalyzer test. However, after two attempts, he could not give an adequate breath sample because he had emphysema. Officer Vessar then requested Borgen to take a blood test pursuant to § 577.020.2, RSMo 1986.

■ Section 577.020.1, RSMo 1986, provides that any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to a chemical test or tests of his breath, blood, saliva, or urine for the purpose of determining the alcohol content of his blood if arrested on reasonable grounds to believe that he was driving a motor vehicle while intoxicated. An arrested person does not have his choice of which statutory test he will take. *Kiso v. King*, 691 S.W.2d 374, 377 (Mo.App.1985).

Section 577.029, RSMo 1986, requires a blood test to be performed by a licensed physician, registered nurse, or trained medical technician at the place of his employment. It also requires the use of a "previously unused and sterile needle" in withdrawing blood for this purpose.

■ It is now well established that a "refusal" is the intentional failure to do what is necessary so that a chemical test of a driver's blood alcohol content can be performed. *Dudenhoeffer v. Director of Revenue*, 780 S.W.2d 701, 703 (Mo.App.1989); *Spralding v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975). Whether this "declination is accomplished by verbally saying, 'I refuse', or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal." *Spralding v. Deimeke*, 528 S.W.2d at 766.

■ In the case at bar, the officer requested Borgen to take a blood test. This request called for an affirmative response by word or deed. Borgen's response that he would not go to a hospital or doctor was not an affirmative response. Therefore, it was a refusal within the meaning of the statute.

■ Section 577.041.1, RSMo Cum.Supp. 1992, provides that if an arrestee makes an informed refusal to submit to a chemical test, "then none shall be given." Accordingly, an officer is without authority to administer the test once it is refused. Moreover, "[o]nce it has been properly determined that a driver has refused to submit to a given chemical test, the driver's subsequent request or offer, at a later time, to submit to the same or another chemical test does not alter his [or her] earlier refusal and has no bearing on the revocation of his [or her] license." *Blanchard v. Director of Revenue*, 844 S.W.2d 589, 590 (Mo.App.1993) *quoting Turner v. Director of Revenue*, 829 S.W.2d 671, 673 (Mo. App.1992); *Dudenhoeffer v. Director of Revenue*, 780 S.W.2d 701, 703 (Mo.App.1989). The Director's evidence showed that because Borgen refused the blood test after being properly advised as to the consequences of refusal, his subsequent expression of willingness to take the test was ineffectual.

The Director made a prima facie showing that Borgen refused the blood test. Therefore, the trial court erred in entering judgment in favor of Borgen at the close of the Director's presentation of evidence. We reverse the trial court's judgment. However, we cannot direct the trial court to enter judgment for the Director, because Borgen has not had an opportunity to present evidence. Borgen, on remand, is entitled to present any evidence he may have which would undermine or contradict the Director's evidence. The judgment is reversed and the cause is remanded to the trial court for a new trial.

All concur.