Deborah Ann SNOW, Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.

No. 20923.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 4, 1996.

**384**

Jeremiah W. (Jay) Nixon, Attorney General, James A. Chenault, III., Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

No appearance for respondent.

MONTGOMERY, Chief Judge.

The Director of Revenue ("Director") revoked the driving privileges of Deborah Ann Snow ("Respondent") for refusing to submit to a chemical test to determine her blood alcohol concentration. Respondent filed a petition seeking review of this revocation. After a hearing, the trial judge ordered reinstatement of Respondent's driving privileges. The Director appeals. The judgment is reversed and the case is remanded.

On December 22, 1995, at approximately 11 p.m., Trooper Jason Cornett (Cornett) of the Missouri State Highway Patrol observed a vehicle driven by Respondent pull out of a parking lot into his lane of traffic. The car forced him to slow down and go onto the shoulder to avoid a collision. As he turned to follow, he noted the vehicle was occupying both lanes of traffic and that a car coming from the opposite direction had to move to the shoulder to avoid being hit. Cornett activated his lights and stopped the vehicle.

Cornett approached the vehicle and signaled Respondent to roll the window down. Respondent appeared to have problems performing this task. When Cornett asked Respondent for her driver's license, he noticed a "strong odor of an intoxicant" coming from inside the vehicle. She could not find her license. Cornett asked her to step out of the vehicle. Although she complied, she could not walk without holding onto the car to keep her balance. He had to tell her several times not to stand in the roadway before she understood him.

Cornett informed Respondent he was going to administer some field sobriety tests. He then administered the horizontal gaze nystagmus test. Respondent could not smoothly pursue a light with either eye and had "maximum deviation." Cornett then asked Respondent to perform the one leg stand and demonstrated it for her. She attempted to do the test but could not lift her leg without falling over. Respondent held onto Cornett to keep her balance. At this point Cornett arrested Respondent for driving while intoxicated and transported her to the sheriff's department in his vehicle.

Upon arriving at the sheriff's department, Cornett read Respondent Highway Patrol Form 2389 outlining her implied consent to have her blood alcohol level measured. He informed her that refusal to take the test would result in the immediate revocation of her driving privileges for one year. Respondent agreed to take a breath test. Trooper Cornett testified he is certified to administer a breath test on the Data Master machine used by the sheriff's department. Respondent attempted to blow into the machine three times but complained she could not do the test because of her asthma. Cornett explained the machine needs a constant breath for a certain amount of time until the alcohol level reaches its peak and the machine can take a valid measurement. Although Cornett could see a digital readout on the machine while she blew into it, Respondent could not sustain a breath for the amount of time necessary for the machine to take a final reading and make a printout. Cornett made a notation that he saw the digital readout reach .20.

After the machine failed to make a printout on the third attempt, Cornett requested Respondent to submit to a blood test. She agreed and he transported her to Barton County Memorial Hospital for the test. Upon arrival at the hospital, Respondent stated, "You're not taking blood from me." Cornett returned Respondent to the sheriff's department. At the sheriff's department, Cornett gave Respondent a form explaining that she refused to submit to alcohol chemical testing and notifying her of the revocation of her driving privileges.

Respondent timely filed a petition for review in the circuit court. The trial court held a hearing on the matter on March 13, 1996. After hearing the evidence, the court determined that Respondent did not refuse to submit to a chemical test because she "did make an attempt and did, apparently, successfully blow to the point that the machine could read it; and that reading was observed by the officer...." The court ordered the revocation for refusal to submit to a chemical test be stricken from Respondent's record.

The Director claims the trial court erred in setting aside the revocation of Respondent's license because Respondent's attempt at submitting to the breath test did not negate her refusal to submit to a blood test at the hospital.[1] The trial court's decision must be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

When reviewing the revocation of a driver's license for a refusal to submit to chemical testing, the trial court shall determine (1) whether the person was arrested; (2) whether the arresting officer had reasonable grounds to believe the person was driving while intoxicated; and (3) whether the person refused to submit to testing. § 577.041.4;[2] *Borgen v. Director of Revenue,* 877 S.W.2d 172, 174 (Mo.App.1994). The first two determinations are not at issue in this appeal. We have only to decide whether or not Respondent refused to submit to a chemical test as contemplated by § 577.020.

Section 577.020.1 provides that "[a]ny person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to ... a chemical test *or tests* of his breath, blood, saliva or urine for the purpose of determining the alcohol ... content of his blood...." (Emphasis added.) The statute further provides that "[t]he implied consent to submit to the chemical tests listed ... shall be limited to not more than two such tests arising from the same arrest, incident or charge." § 577.020.2. A person who comes within the provisions of § 577.020 does not have a choice of which chemical test he will take. *State v. Trumble,* 844 S.W.2d 22, 25 (Mo.App. 1992); *Kiso v. King,* 691 S.W.2d 374, 377 (Mo.App.1985).

The facts in the case at bar strongly resemble those found in *Borgen.* Borgen was arrested after he failed to perform several field sobriety tests. Upon arriving at the county jail, Borgen agreed to take a breathalyzer test; however, he never gave a strong steady sample of his breath. Borgen claimed he had emphysema. The arresting officer gave him two opportunities to adequately blow into the machine. When he failed to provide enough breath the second time, the officer asked Borgen if he would submit to a blood test. Borgen refused and the Director issued a notice of driver's license revocation.

Borgen filed a timely petition for review and was granted a hearing. At the close of the Director's evidence, the trial court granted Borgen's motion for judgment because he did not refuse the breathalyzer test. The judgment recites that "it appears as though he made an effort to blow...." *Id.* at 174. The appellate court did not address whether or not Borgen submitted to a breathalyzer test. Rather, after stating that the arrested person does not have his choice of which statutory test he will take, the court determined the Director made a prima facie case that Borgen refused to submit to the blood test. The court reversed the judgment and remanded to provide Borgen with the opportunity to present evidence in his favor.

In *Borgen,* the court also observed that "[i]t is now well established that a 'refusal' is the intentional failure to do what is necessary so that a chemical test of a driver's blood alcohol content can be performed." *Id.* at 175. Continuing, the court noted that a "refusal" can take place by a person saying, "I refuse," by remaining silent, by not breathing or blowing into the machine, or by indicating a qualified or conditional consent or refusal. *Id.*

Here, Respondent agreed to take a breathalyzer test but later claimed she could not blow long enough or hard enough for the machine to generate a final reading and printout. The guidelines for use of the Data Master machine require the officer administering the test to remove the printout when the machine has completed printing the test result. The officer must then attach it to the report. Cornett could not comply with these guidelines because the machine did not provide a printout. Instead, he wrote the "subject couldn't give a sample." He also noted he saw the digital reading reach .20, but he

---

1. Since Respondent has not favored us with a brief, we must decide the case without the benefit of her view on this issue.

2. All statutory references are to RSMo 1994.

did not feel this was an accurate final measurement and the guidelines do not indicate that a visual reading has any significance.

█ Cornett then asked Respondent to submit to a second test pursuant to § 577.020. She first consented but later refused the test. Because Cornett did not request Respondent to submit to more than two tests, we need not determine whether Respondent's failure to blow hard enough into the Data Master machine constituted a refusal. Section 577.020 allows an officer to request more than one of the statutory tests. Respondent does not dispute that she refused the blood test when requested.

The trial court's determination erroneously applied the law. Respondent refused to submit to a blood test after she either did not or could not properly perform the breathalyzer test. Therefore, her driving privileges should not have been reinstated. The judgment is reversed and the cause is remanded to the trial court to enter a new judgment consistent with this opinion.

PARRISH and SHRUM, JJ., concur.