Renada Lorene HURSH, Appellant,

v.

**DIRECTOR OF REVENUE,**
Respondent.

No. WD 69285.

Missouri Court of Appeals,
Western District.

Jan. 13, 2009.

J. Eric Mitchell, Clinton, MO, for appellant.

Nicole L. Loethen, Associate Solicitor, Jefferson City, MO, for respondent.

Before JOSEPH P. DANDURAND, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Renada Hursh appeals the judgment affirming the revocation of her driving privileges under section 577.041.5.[1] She claims that the finding that she refused to submit to a chemical test as required by section 577.041 is not supported by substantial evidence because, she says, the evidence shows that she tried to blow into the breathalyzer. The judgment is affirmed.

### Facts

On November 1, 2007, at approximately 1:50 a.m., Officer Fidler stopped Hursh for a traffic violation. After Hursh failed field sobriety tests, the officer arrested Hursh for driving while intoxicated. She was taken to the Warrensburg police station.

Officer Fidler read the implied consent warning[2] to Hursh and asked her if she would take a breath test. After asking three or four times, she responded that she would take the test. Over the next fifteen minutes, Officer Fidler gave Hursh three opportunities to provide an adequate breath sample.

Before Hursh's first opportunity, Officer Fidler explained the instructions to her: he told her to form a tight seal with her lips around the mouthpiece of the testing instrument and blow, keeping the instrument's tone sounding, until told to stop. He told her that the breathalyzer makes a sound—a tone—when adequate air is provided, and the tone must continue to sound until an adequate sample is obtained. Hursh gave a one– or two-second puff into the mouthpiece, stopped, then blew again. The breathalyzer did not emit a continual tone and registered that the sample was invalid.

Officer Fidler explained the instructions to Hursh a second time. Again, according to his testimony, she failed to follow those instructions, instead blowing one– or two-second puffs into the mouthpiece, stopping, then blowing again. And again, the instrument failed to emit a continual tone and registered that the sample was invalid.

---

1. All references to section 577.041 are to RSMo Cum. Supp. 2005.

2. Required by section 577.041, the warning informs the driver of the reason for requesting the test; that evidence of refusal to take the test may be used against her; and that her driver's license shall be immediately revoked upon refusal to take the test.

Officer Fidler told Hursh that he would consider her failure to provide an adequate sample on her third opportunity a refusal. On her third opportunity, he said, Hursh again failed to blow as instructed, and the instrument again registered that the sample was invalid.

Officer Fidler, who established his credentials and training to operate the instrument, testified that the instrument had been tested and appeared to be functioning properly at the time. He testified that when the instrument registers that a sample is invalid, it means that the test-taker did not provide an adequate sample within the allotted time.

Hursh's driver's license was revoked for refusing to submit to a breath test, and she sought review in the trial court. The trial court affirmed the revocation of her license, finding that she refused to submit to a breath test. Hursh appeals to this court.

## Standard of Review

■ We will sustain the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## Analysis

■ Section 577.020.1(1),[3] the implied consent law, provides that all persons who operate a motor vehicle on public highways in Missouri are deemed to have consented to a chemical test or tests of their breath, blood, saliva, or urine to determine their blood alcohol or drug content if they are arrested for any offense arising out of acts for which the arresting officer had reasonable grounds to believe were

committed while they were driving while in an intoxicated or drugged condition. Pursuant to section 577.041.4, the revocation of driving privileges for failure to submit to a chemical test is limited to a determination of whether the Director of Revenue established that: (1) the person was arrested; (2) the arresting officer had reasonable grounds to believe that the person was driving while intoxicated; and (3) the person refused to submit to a chemical test. *See Smith v. Dir. of Revenue*, 260 S.W.3d 896, 901 (Mo.App.2008). If one of these elements is not established, the trial court must order the reinstatement of driving privileges. Section 577.041.5; *see also Smith*, 260 S.W.3d at 901. Here, there is no dispute as to whether Hursh was arrested or whether the arresting officer had reasonable grounds to believe she was driving while intoxicated. Only Hursh's refusal to submit is at issue, and she argues that the finding that she refused to submit to a chemical test as required by section 577.041 is not supported by substantial evidence.

■ In the context of the implied consent law, the Missouri Supreme Court has defined a refusal as follows:

[A]n arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, "I refuse," or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal.

*Spradling v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975). "An arresting officer's narrative combined with the Alcohol Influence

---

**3.** All references to section 577.020 are to

RSMo Cum. Supp. 2006.

Report constitutes sufficient evidence of a refusal to submit to a chemical test." *Tarlton v. Dir. of Revenue*, 201 S.W.3d 564, 568 (Mo.App.2006). "[A] refusal to submit to a chemical test need not be shown by the driver's express refusal upon the initial request." *Hawk v. Dir. of Revenue*, 943 S.W.2d 18, 20 (Mo.App.1997). "A person's act in not blowing into the testing machine and by blowing around the mouthpiece to prevent the necessary quantity of air to proceed into the machine may be considered a refusal." *Tarlton*, 201 S.W.3d at 569.

The legislature has provided that a driver who is "unconscious or who is otherwise in a condition rendering him incapable of refusing to take a test" shall not be deemed to have refused to take the test. Section 577.033, RSMo 2000. Hursh claims she was incapable because she was crying in such a manner that she *could not* blow sufficiently. She argues that her inability to provide an adequate sample was not an exercise of her free will or a deliberate decision. Instead, she asserts, it was an effort on her part that was "thwarted by uncontrollable emotions." Hursh also argues that there is no evidence that she blew around the mouth piece to prevent air flow into the machine or that she failed to blow, thus implying that she attempted to blow appropriately into the machine.

■ This is a factual dispute about whether Hursh refused to cooperate and take the test appropriately. The trial court determined she refused to take the test. Hursh focuses on evidence supporting a conclusion contrary to the one reached by the trial court. "In a driver's license revocation case, a trial court has the prerogative when weighing witness credibility, to accept or reject all, part, or none of the testimony of any witness." *Martin v. Dir. of Revenue of Mo.*, 142 S.W.3d 851, 857 (Mo.App.2004). "We ac-cept as true all evidence and inferences in favor of the prevailing party and disregard contrary evidence." *White v. Dir. of Revenue*, 227 S.W.3d 532, 534 (Mo.App.2007). "The trial court is afforded wide discretion in resolving conflicts in the evidence, even where there is evidence that would support a different result." *Baldridge v. Dir. of Revenue*, 82 S.W.3d 212, 220 (Mo.App. 2002).

When the officer asked her if she would submit to a breath analysis, Hursh refused to answer until she had been asked three or four times. Hursh failed to blow into the instrument as instructed. She blew short, one to two second puffs into the mouthpiece. The officer testified that she did not blow sufficiently to maintain a constant tone and that the breathalyzer machine registers an invalid sample, as in this case, when the driver does not provide an adequate sample in the allotted time. When the officer was asked whether Hursh was "weeping and sobbing," he replied: "I don't know about all that, but she was crying." After her three opportunities to take the breath test, she responded sarcastically to the interview questions. (Q: What time is it? A: Does it matter? Q: When did you last sleep? A: At night.)

■ There is no evidence that Hursh suffers from a condition that prevented her from understanding the instructions or providing an adequate breath sample. Hursh did not testify at the hearing and did not call any witnesses. The Director of Revenue and the court may draw inferences adverse to a driver from a driver's failure to testify and present evidence. *See Smith v. Dir. of Revenue*, 77 S.W.3d 120, 122 (Mo.App.2002). The trial court was entitled to believe Officer Fidler's testimony, which suggested Hursh was willfully attempting to avoid doing what was necessary to perform the test. The trial

court could reasonably find that Hursh refused to cooperate with the test. *See also Hawk,* 943 S.W.2d at 21 (discussing the prerogative of the trial court to determine whether a driver willfully refused when there is contrary evidence); *Stewart v. McNeill,* 703 S.W.2d 97, 98–99 (Mo.App. 1985) (discussing the situation wherein the driver failed to blow into the machine for a sufficient length of time).

Hursh argues that the issue here is similar to the one in *Honeyfield v. Director of Revenue,* 140 S.W.3d 192 (Mo.App.2004). In *Honeyfield,* the driver blew into the machine two times. The machine registered an "incomplete" sample the first time and an "invalid" sample the second time. *Id.* at 193. Upon review, the police officer administering the test could not explain the difference between an incomplete and an invalid sample. *Id.* at 194. There was a discrepancy between the officer's report and his court testimony as to whether the driver was not forming a complete seal or was just not blowing hard enough. The officer also could not establish that the instrument was operating correctly because, he acknowledged, he "c[ould]n't remember" how to tell if the instrument was working properly because it had "been a while" since he had been given training. The court dismissed the revocation proceeding. *Id.* The court of appeals affirmed the dismissal, noting that whether the driver's failure to provide a sufficient sample was volitional is a question of fact. *Id.* at 195. In the case *sub judice,* the trial court was not presented with conflicting results. All three samples were "invalid," and the officer testified that the results were caused by Hursh not providing a sufficient air sample. The officer offered evidence showing that the instrument was presumed to be operating correctly. *Honeyfield,* which reminds us that the trial court determines the police officer's credibility, is consistent with this analysis.

Hursh states that the police officer administering the test should have requested another type of chemical test that she could have physically performed. She cites no authority for this proposition. It was not apparent to the officer that she was physically unable to take the breath test. Thus, we fail to see that there is any argument that the officer was required to give her an option of taking another type of test. *Sweatt v. Dir. of Revenue,* 98 S.W.3d 926, 929 (Mo.App.2003).

Hursh's point is denied.

### Conclusion

The trial court was entitled to believe the evidence presented that Hursh was uncooperative and refused to take the breath test by failing to provide an adequate air sample. Its conclusion is supported by substantial evidence. The judgment is affirmed.

All concur.