Zhouqun Iris WEI, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. SD 30465.

Missouri Court of Appeals, Southern District, Division One.

Feb. 24, 2011.

Motion for Rehearing or Transfer Denied March 21, 2011.

Application for Transfer Denied April 26, 2011.

Jianbin Wei, Springfield, for Appellant.

Chris Koster, Atty. Gen. and Jonathan H. Hale, Sp. Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

This appeal involves the judicial review of the revocation of Zhouqun Iris Wei's ("Driver") driving privileges by the Director of Revenue ("the Director") pursuant to section 577.041[1] for refusing to submit to a breath analysis test to determine whether she was legally intoxicated. Subsequent to Driver's filing of her petition for review and after a hearing, the trial court sustained the Director's revocation of Driver's driving privileges. Driver now brings five points of trial court error. The judgment of the trial court is affirmed.

The Director submitted her entire case on the certified record of the Missouri Department of Revenue, which contained a copy of Trooper Adam Dillon's ("Trooper Dillon") alcohol influence report ("AIR") with attached "Narrative;" a copy of Driver's "Missouri Driver Record;" and a copy of the "Refusal to Submit to Alcohol ... Chemical Test ..." form. *See* § 302.312, RSMo 2000. At Driver's request the trial court entered into evidence a copy of the videotape from Trooper Dillon's dashboard camera and a copy of Trooper Dillon's deposition taken by Driver's counsel on October 29, 2009. Driver did not testify.

On January 27, 2010, the trial court entered its "Judgment" in which it found Driver "was arrested, that the arresting officer had reasonable grounds to believe [Driver] was driving a motor vehicle while in an intoxicated condition and [Driver] refused to submit to a chemical test," and sustained the Director's revocation of Driver's driving privileges. Subsequent to the disposition of Driver's post-trial motion, this appeal followed.

■ On appeal, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, the judgment is against the weight of the evidence, or the trial court erroneously declared or applied the law. *White v. Dir. of Revenue*, 321 S.W.3d 298, 307 (Mo. banc 2010).[2] "In reviewing a particular issue

---

1. Unless otherwise stated, all statutory references are to RSMo Cum.Supp.2006, and all rule references are to Missouri Court Rules (2009).

2. The recent Supreme Court of Missouri opinion of *White* involved the review of a driver's license suspension under section 302.535 rather than the review of a license revocation under section 577.041 as in the present matter. Yet, due to the similarities in these stat-

utes, our Supreme Court "has cited to section 577.041 cases interchangeably with section 302.535 cases when discussing the issues related to probable cause, the standard of review, and the deference given to implicit and explicit factual findings." *Id.* at 305 n. 6. We do likewise in this opinion without any further indication or discussion.

We also note that our high court's ruling in *White* necessarily overrules prior case law

that is contested, the nature of the appellate court's review is directed by whether the matter contested is a question of fact or law." [3] *Id.* "When the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." *Id.* at 308; *see Bd. of Educ. of City of St. Louis v. Mo. State Bd. of Educ.*, 271 S.W.3d 1, 7 (Mo. banc 2008) (holding that when reviewing fact questions this Court gives deference to the finder of fact).

The record reveals that in the early morning hours of June 7, 2009, Trooper Dillon observed Driver's vehicle "traveling very close to the fog line." Trooper Dillon reversed his direction to follow Driver's vehicle when he observed her vehicle "weaving within its lane of travel" and observed that "the right rear tail light cover was broken and a white light was emitting to the rear ..." [4] Trooper Dillon initiated a traffic stop of the vehicle and made contact with Driver at which time he observed "her eyes were bloodshot,

glassy, and staring...." He also "detected an odor of intoxicants emanating from the interior of the ..." vehicle as he was speaking with Driver. Trooper Dillon asked Driver's passenger to remain in the vehicle and had Driver accompany him to his patrol car. Once inside the patrol car, Trooper Dillon continued to smell the "strong" "odor of intoxicants about [Driver's] breath as she spoke," and she admitted to having a single, alcoholic drink earlier in the evening. Driver agreed to submit to a portable breath test and "the result indicated a blood alcohol content greater than .080 percent," specifically "above ... [a] nine, and below a one...." Trooper Dillon then initiated a series of field sobriety tests and asked Driver to perform them on the concrete to the rear of his vehicle. Trooper Dillon reported the following results for those tests in the narrative portion of his AIR report:

> [w]hile performing the Horizontal Gaze Nystagmus test, [Driver] swayed in a side to side manner, did not stand with

dealing with standards of review and other considerations relating to these types of sections 577.041 and 302.535 cases. To the extent that cases cited in this opinion are in conflict with the holding in *White* they are cited herein to support other principles of law not affected by the *White* ruling.

3. Driver appears to argue in her brief that as this matter was submitted solely on the records it was an uncontested case that is subject to *de novo* review by this Court. "It is only when the evidence is *uncontested* that no deference is given to the trial court's findings." *Id.* at 308.

> Evidence is uncontested in a court-tried civil case when the issue before the trial court involves only stipulated facts and does not involve resolution by the trial court of contested testimony; in that circumstance, the only question before the appellate court is whether the trial court drew the proper legal conclusions from the facts stipulated. *Id.* "In such cases, the issue is legal, and there is no finding of fact to which to defer." *Id.* Furthermore, " '[t]he facts necessary to estab-

lish the Director's prima facie case can be proven through ... documentary evidence alone.' " *Zummo v. Dir. of Revenue*, 212 S.W.3d 236, 241 (Mo.App.2007) (quoting *Howdeshell v. Dir. of Revenue*, 184 S.W.3d 193, 197 (Mo.App.2006)). While the Director submitted its case on the record, Driver also submitted her case by introducing a copy of the videotape and a copy of Trooper Dillon's deposition into evidence. The lack of live testimony in this case does not transform it into an uncontested matter. The facts were not stipulated to and Driver submitted evidence to rebut the evidence offered by the Director. This was clearly a contested case and the trial court's decision is given deference. *White*, 321 S.W.3d at 307.

4. The videotape of this traffic stop was received into evidence by the trial court and was reviewed by this Court as part of the record on appeal. This dashboard camera videotape is not of good quality, and this Court was unable to clearly see either Driver weaving or the broken tail light of Driver's vehicle.

her heels and toes touching, did not always follow my finger, did not always keep her head stationary, and all six points and vertical nystagmus were observed. During the Walk and Turn test, [Driver] did not maintain the required starting position, began the test before being instructed to do so, did not touch heel to toe on any forward or return steps, made an improper turn to her right, hesitated and stepped off the line on forward step eight, did not look at her feet, and used her arms for balance. While performing the One Leg Stand test, [Driver] did not look at her foot, used her arms for balance, did not keep both legs straight, and put her foot down after 4 and 27 seconds had lapsed. [Driver] stated the entire alphabet in a choppy [5] manner .... [6]

Following her performance on the field sobriety tests and the portable breath test, Trooper Dillon placed Driver under arrest and transported her to the Camden County Sheriff's Department.[7] Upon arrival, Trooper Dillon "read [Driver] the Missouri Implied Consent" [8] form and she consented to a chemical test of her breath to determine its alcohol content. Trooper Dillon wrote in the narrative portion of the AIR that the following then occurred:

[b]efore both tests, I instructed [Driver] to provide a long and steady breath sample until I instructed her to stop. [Driver] stated she understood and during the first attempt, [she] provided two or three second bursts of air and would stop. As [Driver] provided a breath sample, I observed the instrument's digital display climb from .000 to .093 percent. [Driver's] improper efforts continued until the instrument deemed the test to be invalid. I explained to [Driver] I would allow her to perform another test but, if her improper actions continued I would consider her efforts to be a refusal.

Before starting the second test, [Driver] requested to watch the digital display. I explained to [Driver] that she would inevitably stop providing a breath sample when she saw her alcohol level was above .080 percent. [Driver] ensured me she would not do that and I allowed her to watch the display. As [Driver] provided her breath, the digital display indicated an alcohol percent of .081 percent and [Driver] stopped providing a sample. The remainder of the test mimicked her actions of the first. [Driver's] improper efforts again continued until the instrument deemed the test to be invalid. Due to [Driver's] continuous

---

5. In his deposition testimony, Trooper Dillon indicated that by "choppy" he meant "not smooth. It's a hesitation between letters to kind of regain your thought, or to get yourself back to where you need to be for lack of better words." This audio portion of Trooper Dillon's interaction with Driver was captured on the videotape of the traffic stop and any hesitancy on the part of Driver in answering his questions is unclear in our review.

6. As the field sobriety tests were performed behind Trooper Dillon's vehicle, Driver's performance was not caught on the videotape. Likewise, Trooper Dillon had his microphone turned off during the majority of his interactions with Driver impairing this Court's abili-

ty to review any of Driver's or Trooper Dillon's audible remarks.

7. In both the AIR and in his deposition, Trooper Dillon indicated he handcuffed Driver and placed her in the front seat of his vehicle while her passenger rode in the backseat of his vehicle; however, the videotape reveals he did not handcuff Driver.

8. See § 577.020; *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 619 (Mo. banc 2002) (holding that under section 577.020 a motorist by applying for and accepting a vehicle operator's license impliedly consents to submission to a chemical analysis of his blood alcohol level when charged with driving while intoxicated).

improper efforts, the breath test was deemed to be a refusal.

■ In her first point relied on, Driver asserts the trial court erred in finding there were reasonable grounds to believe she had been operating her motor vehicle in an intoxicated condition because such a finding "was not supported by substantial evidence...." She asserts such a finding was erroneous because

the [AIR] (the Director's sole piece of evidence) was shown by the video of the traffic stop and [Trooper Dillon's] deposition to contain numerous glaringly false and untrue, inconsistent, contradictory, implausible and mistaken statements on this essential element of a chemical refusal case, and said false, untrue, inconsistent, contradictory, implausible and mistaken statements tainted the rest of the Director's evidence and deprived the same of the substantiality required to support a judgment.

In her argument under this first point relied on, Driver cites to various purported "inconsistencies" and "inaccuracies" among Trooper Dillon's AIR, his deposition testimony and the videotape. For example, she takes issue with the fact that the AIR and the deposition testimony set out that Driver was handcuffed before being transported to the sheriff's department but the videotape shows she was not handcuffed. We find this purported inconsistency or mistake to be non-material to the issues set out in section 577.041 which the trial court was charged with determining. *See Phelps v. Dir. of Revenue,* 47 S.W.3d 395, 402 (Mo.App.2001), *overruled on other grounds by Verdoorn v. Dir. of Revenue,* 119 S.W.3d 543, 547 (Mo. banc 2003). Driver also asserts that the broken taillight and the weaving in her lane are not clear from the videotape yet were recited in both the AIR and Trooper Dillon's deposition testimony as reasonable grounds for her traffic stop. Another "contradicto-

ry, implausible and mistaken statement[ ] ..." argued by Driver includes the fact that Trooper Dillon testified in his deposition that he first encountered Driver "a mile and a half ... north of [Missouri] 7," but that he was able to reverse his vehicle's direction and catch up to Driver such that he pulled her over "one mile north of Missouri 7"—a maneuver Driver maintains would have necessitated "[h]is average speed [to] have been 112 mph...." This Court, however, sees no probative evidence supporting the contention that any statements made by Trooper Dillon were intentionally misleading or "glaringly false ..." as urged by Driver. There are almost always going to be factual discrepancies in any matter such as the present one where the incident is rather poorly videotaped, the episode is then reported in writing by the arresting officer a short time after the arrest, and then the officer is deposed a significant time later. As stated by the Director in its brief "the great majority of the 'inconsistencies' that [Driver] points to are simply negative inferences that the trial court chose not to make." As clearly pointed out in the Supreme Court of Missouri's recent decision in *White,* 321 S.W.3d at 308, this Court defers to the trial court's view of the evidence and will not second-guess the trial court's judgment on contested facts. The trial court did not err in its consideration of the facts presented in this matter. *Id.* at 309. Point I is denied.

In her second point relied on, Driver maintains the trial court erred in overruling her motion to reconsider and in failing to enter judgment in her favor because

said ruling condoned and sanctioned the use of false and untrue statements and compromised the integrity of administration of justice in that [Driver] had pointed out to the trial court in her motion to reconsider the specific false and untrue statements bearing on an essential[ ]element of the Director's case

... and further in that the proceedings relating to said ruling were irregular.

It is our view that the trial court's reliance on the AIR and the deposition testimony of Trooper Dillon in this instance do not constitute the use of condoning "false and untrue statements" nor does such reliance on the AIR and the deposition testimony of Trooper Dillon "compromise[ ] the integrity of [the] administration of justice." The trial court is charged with viewing the contested facts in matters such as the one at hand and in making a determination that this Court defers to upon appellate review. *White*, 321 S.W.3d at 309. We find no error in the trial court's determination of the facts in this matter.

Also under this point relied on, Driver asserts there were "irregular" proceedings that occurred below. The problem this Court faces with this portion of Driver's argument is the fact that Driver has not argued these irregularities warrant reversal or remand or any type of corrective measures by this Court. Driver merely requests "[t]his Court, as an appeals court having supervisory functions over the trial courts within its district and proceedings therein, should address these procedural irregularities." She has failed to explain to this Court how any of these supposed irregularities may have affected the outcome of her case or prejudiced her such that this Court should or could take any action in her favor. Furthermore, "Rule 81.08(a) states the notice of appeal must specify the judgment or order appealed from." *Erickson v. Pulitzer Pub. Co.*, 797 S.W.2d 853, 858 (Mo.App.1990). In her Notice of Appeal, Driver does not posit trial court error on the basis of purported "procedural irregularities," including her stated allegations that the trial court had not ruled on her motion for reconsideration. Accordingly, we need not further review these allegations. *Id.* Point II is denied.

◼ Next we address Driver's Points III and IV conjunctively. In her third point relied on, Driver asserts the trial court erred in entering judgment in favor of the Director because such a judgment "was against the weight of the evidence in that the only objective evidence, the video of the traffic stop, shows that [Trooper Dillon] did not have reasonable grounds to believe [Driver] had operated a vehicle in an intoxicated condition." In her fourth point relied on, Driver maintains the trial court erred in finding in favor of the Director because such a ruling was not supported by substantial evidence "in that the Director presented no credible evidence that [Trooper Dillon] properly deemed [Driver] to have refused to sub[mit] to a chemical test."

It has long been held that in trial court proceedings for the review of a driver's license revocation pursuant to section 577.041, the trial court's inquiry is specifically limited to three issues: whether the person was arrested or stopped; whether the officer had reasonable grounds to believe that the driver was driving while in an intoxicated or drugged condition; and whether the driver refused to submit to a chemical test. § 577.041.4(1)–(3). "If the court determines any issue not to be in the affirmative, the court shall order the [D]irector to reinstate the license ...." § 577.041.5; *see Zummo*, 212 S.W.3d at 241.

◼ In examining whether reasonable grounds existed for Trooper Dillon to believe Driver was operating her vehicle in an intoxicated condition, we note that " '[r]easonable grounds,' [in section 577.041.4], is ... synonymous with probable cause." *White*, 321 S.W.3d at 305 n. 6; *Hinnah*, 77 S.W.3d at 620. Probable cause exists when a police officer observes illegal operation of a motor vehicle and observes indicia of intoxication upon com-

ing into contact with the motorist. *Zummo*, 212 S.W.3d at 242; *see York v. Dir. of Revenue*, 186 S.W.3d 267, 270 (Mo. banc 2006). The probable cause analysis is an objective standard and requires consideration of all the information in the officer's possession prior to arrest. *See Guhr v. Dir. of Revenue*, 228 S.W.3d 581, 585 n. 3 (Mo. banc 2007). The trial court must assess the facts by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer. *York*, 186 S.W.3d at 270.

Here, there was evidence as set out in the AIR that Trooper Dillon observed Driver's "eyes were bloodshot, glassy, and staring ..." and that he "detected an odor of intoxicants emanating from ..." Driver. Further, in his deposition testimony Trooper Dillon testified he "noticed that there was a ['strong'] odor of intoxicants emanating from the vehicle, and then [he] also noticed that [Driver's] eyes were bloodshot" and "glassy." In both the AIR and the deposition testimony Trooper Dillon recounted that Driver performed poorly on all three standardized field sobriety tests. The odor of intoxicants, bloodshot eyes, and a driver's failure of field sobriety tests have previously been held to be indicia of intoxication. *Arch v. Dir. of Revenue*, 186 S.W.3d 477, 480 (Mo.App.2006); *Edwards v. Dir. of Revenue*, 295 S.W.3d 909, 914 (Mo.App.2009). Based on the record and our standard of review, *White*, 321 S.W.3d at 308, we cannot say the trial court erred when it determined Trooper Dillon had reasonable grounds to believe Driver was driving in an intoxicated condition.

■ Second, we explore whether there was sufficient evidence to prove Driver refused to submit to a chemical test of her breath for the presence of alcohol.

In the context of the implied consent law, the Missouri Supreme Court has defined a refusal as follows:

'[a]n arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, 'I refuse,' or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal.'

*Hursh v. Dir. of Revenue*, 272 S.W.3d 914, 916 (Mo.App.2009) (quoting *Spradling v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975)). "'An arresting officer's narrative combined with the [AIR] constitutes sufficient evidence of a refusal to submit to a chemical test.'" *Id.* at 916–17 (quoting *Tarlton v. Dir. of Revenue*, 201 S.W.3d 564, 568 (Mo.App.2006)). "'A refusal to submit to a chemical test need not be shown by the driver's express refusal upon the initial request.'" *Id.* (quoting *Hawk v. Dir. of Revenue*, 943 S.W.2d 18, 20 (Mo.App. 1997)). "'A person's act in not blowing into the testing machine ... to prevent the necessary quantity of air to proceed into the machine may be considered a refusal.'" *Id.* (quoting *Tarlton*, 201 S.W.3d at 569).

Here, evidence in the record supports the trial court's implicit determination that Driver failed to blow into the breathalyzer instrument as instructed by Trooper Dillon. According to Trooper Dillon, on her first attempt, she "provided ... a two to three second burst of air and would stop ..." blowing thereafter. On her second attempt she "mimicked" the actions from her first attempt and again stopped blowing despite Trooper Dillon's instructions. Her "improper efforts again continued until the instrument deemed the test to be invalid ..." and Trooper Dillon informed Driver "that [he] didn't feel that

she was performing the test properly, and that [he] was deeming her actions to be refusal to provide a valid sample." It is clear that the "[i]ntentional failure to do what is necessary in order that the test can be performed is a refusal to take the test." *Stewart v. McNeill,* 703 S.W.2d 97, 99 (Mo.App.1985). Further, "[t]here is no evidence that [Driver] suffers from a condition that prevented her from understanding the instructions or providing an adequate breath sample." *Hursh,* 272 S.W.3d at 917. The trial court was entitled to believe Trooper Dillon's AIR and deposition testimony that suggested Driver was willfully attempting to avoid doing what was necessary to perform the test. The trial court was well within its province to reasonably find Driver refused to cooperate with the test. *White,* 321 S.W.3d at 310–11. Driver's repeated refusal to properly blow into the machine pursuant to Trooper Dillon's instructions was a refusal within the meaning of section 577.041. *See Chapman v. McNeil,* 740 S.W.2d 701, 703 (Mo.App.1987). The trial court did not err in finding there was substantial evidence supporting the trial court's judgment that Driver refused to perform the breathalyzer test at issue. Driver's Points III and IV are denied.

■ In her fifth point relied on, Driver asserts the trial court erred in entering judgment in favor of the Director because "the judgment violated [Driver's] right to constitutional due process in that it denied her right to confront and cross-examine [Trooper Dillon]."

In the argument portion of this point relied on, Driver maintains that a "judgment based on . . . written records alone violate[s] . . ." a driver's due process rights and "denied [Driver] rights to confront and cross-examine [Trooper Dillon]. She goes on to assert "[a]n appellate court should not, and [cannot], sanction a procedure whereby the trial de novo provided in sec-

tion 577.041.4 . . . is reduced to nothing more than merely rubber stamping whatever conclusion was reached by the arresting officer in his or her report or testimony."

■ It is well-established that the facts necessary to establish the Director's *prima facie* case can be proven through use of an AIR and a Narrative Report. *See Zummo,* 212 S.W.3d at 241; *Burk v. Dir. of Revenue,* 71 S.W.3d 686, 687 (Mo.App. 2002); *Lyons v. Dir. of Revenue,* 36 S.W.3d 409, 411 (Mo.App.2001). Additionally, Driver had every opportunity to cross-examine Trooper Dillon during the course of his depositions and could have subpoenaed him to testify at trial and cross-examine him further; however, she chose not to do so. Point V has no merit and is denied.

The judgment of the trial court is affirmed.

LYNCH and BURRELL, JJ., concur.