Stephen K. PHILLIPS, Respondent,

v.

Quentin WILSON, Appellant.

No. WD 59496.

Missouri Court of Appeals, Western District.

Jan. 22, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Forest W. Hanna, III, Asst. Atty. Gen., Kansas City, for appellant.

Stephen K. Phillips, Oak Grove, pro se.

Before PATRICIA BRECKENRIDGE, Presiding Judge, WILLIAM E. TURNAGE, Senior Judge, and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

The Missouri Director of Revenue revoked Stephen Phillips' driver's license based on an alleged refusal to submit to a breath test pursuant to § 577.041 [1]. The trial court reversed the Director's decision and reinstated Phillips' driving privileges. The Director brings two points on appeal.

On September 1, 2000, Officer Travis Rhyne of the Lake Winnebago, Missouri, Police Department was on patrol when he observed a truck driven by Phillips pass another vehicle in a no-passing zone. The truck nearly caused a head-on collision and forced an on-coming vehicle onto the shoulder of the road. The officer activated his emergency lights and stopped Phillips. As he approached the driver's side, he smelled alcohol coming from the truck. Officer Rhyne observed that Phillips' eyes were glassy and bloodshot and his breath smelled of alcohol. He asked Phillips for his license and insurance card. Phillips told the officer with slurred speech that he needed to get the papers out of the glove box. Phillips eventually handed the officer an expired insurance card and a court document indicating that his license was to be revoked. When asked why he had passed a car in a no-passing zone, Phillips did not answer. When asked if he had been drinking, Phillips responded that he had not.

Officer Rhyne returned to his patrol car to check Phillips' driving record with the Cass County Dispatch and discovered that he had been arrested numerous times for alcohol-related offenses. Officer Rhyne then returned to the vehicle to conduct field sobriety tests. The first test he tried to implement was the "gaze nystagmus" test. After explaining the test and several unsuccessful attempts to have Phillips perform the test, Officer Rhyne determined that Phillips was deliberately trying to avoid performing the test. Officer Rhyne next attempted the "walk and turn" test. Phillips was unable to keep his balance while listening to instructions and failed to satisfactorily perform the test. Finally, Officer Rhyne attempted to implement the "one-legged stand" test. Phillips failed that test as well and was arrested for driving while intoxicated.

After he was taken to the police station, Phillips was asked to consent to a breath test. He responded that he would not take the test. Phillips then asked Officer Rhyne what he would do. The officer responded that Phillips should call his lawyer. Phillips responded that it was too late to call his lawyer. According to the officer's report, the following exchange then took place between the officer and Phillips: "I then asked [Phillips] again if he wanted to refuse the test. [Phillips] then said he would but then stated he wouldn't." Officer Rhyne explained to Phillips that he had refused the test and was going to be issued three citations. Based upon Phillips refusal to submit to a

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

breath test, the Missouri Director of Revenue revoked his driver's license for one year.

Phillips filed a petition for judicial review of the administrative revocation in Cass County Circuit Court. The only evidence presented at trial was the Director's "Exhibit A," consisting of the Alcohol Influence Report; Officer Rhyne's narrative report; the Arrest Report; Phillips' Missouri Driver's Record; DOR Form 4323; and various certifications authenticating the documents. After review of the record, the trial court found that Phillips had not refused the breath test. The court based its decision on ambiguities in the documents suggesting that Phillips attempted to revoke his initial refusal. This appeal follows.

In his first point, the Director argues the trial court misapplied controlling Missouri law in finding that Phillips had not refused the breath test. Specifically, the Director argues that once a driver refuses the test, the driver has no legal right to revoke that refusal.

■■■■ We will uphold the trial court's judgment in a driver's license revocation case unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc.1976); *Hoyt v. Director of Revenue*, 37 S.W.3d 356, 358 (Mo.App. W.D.2000). "When reviewing the revocation of a driver's license for a refusal to submit to a chemical test, the trial court shall determine only the following: (1) whether the person was arrested; (2) whether the arresting officer had reasonable grounds to believe that the person was driving while intoxicated; and (3) whether the person refused to submit to the test." *Borgen v. Director of Revenue*, 877 S.W.2d 172, 174 (Mo.App. W.D.1994); § 577.041.2. The only issue in the case at

bar is whether Phillips consented to the breath test.

■■■■ The evidence presented at trial unequivocally reflects that Phillips initially refused to submit to the breath test. Phillips did not present any evidence and did not contest the statement on the report indicating that he had initially refused to take the test. It is well-settled that once a driver makes an informed refusal to submit to a breath test or other chemical test, "none shall be given." § 577.041.1; *Berry v. Director of Revenue*, 885 S.W.2d 326, 327 (Mo. banc 1994); *Brown v. Director of Revenue*, 34 S.W.3d 166, 171 (Mo.App. W.D.2000); *Borgen*, 877 S.W.2d at 175; *Blanchard v. Director of Revenue*, 844 S.W.2d 589, 590 (Mo.App. E.D.1993). "Moreover, '[o]nce it has been properly determined that a driver has refused to submit to a given chemical test, the driver's subsequent request or offer, at a later time, to submit to the same or another chemical test does not alter his [or her] earlier refusal and has no bearing on the revocation of his [or her] license.'" *Borgen*, 877 S.W.2d at 175 (quoting *Blanchard v. Director of Revenue*, 844 S.W.2d 589, 590 (Mo.App. E.D.1993) (quoting *Turner v. Director or Revenue*, 829 S.W.2d 671, 673 (Mo.App.1992))); See also, *Dudenhoeffer v. Director of Revenue*, 780 S.W.2d 701, 703 (Mo.App.1989).

■■■■ The fact that a driver may change his mind after an initial refusal and consent to the test is of no consequence. In *Borgen*, the driver was unable to complete a breath test and refused to submit to a blood test. *Borgen*, 877 S.W.2d at 174. He then changed his mind and asked if he could take the blood test, but was told by the officer that he had refused. *Id*. This Court determined that the Director had made a prima facie showing that the driver refused the test, and reversed the trial

court's judgment reinstating his driving privileges. *Id.* at 175. The Court noted that because the driver refused the blood test after being properly advised of the consequences, "his subsequent expression of willingness to take the test was ineffectual." *Id.* Similarly, in *Blanchard,* the driver would not give a definite answer when he was first asked to submit to a breath test, so the officer wrote on the Alcohol Influence Report that he would take the test. *Blanchard,* 844 S.W.2d at 590. Later, the driver was asked again if he would take the test and refused. *Id.* He then immediately changed his mind and said he would take the test. *Id.* No test was given, and the court determined that he had refused the test. *Id.* "Subsequent conduct indicating an agreement to submit is irrelevant even in a case such as this, where petitioner asserts he had an 'immediate change of heart' with respect to his refusal." *Id.* at 590–91.

The ambiguities on which the trial court relied occurred after the initial unequivocal refusal. Based on *Borgen* and *Blanchard,* even assuming, *arguendo,* that the ambiguities discerned by the trial court could be read to suggest that Phillips changed his mind and agreed to take the test after his earlier refusal, Phillips would not be entitled to reinstatement. Accordingly, the trial court's judgment must be reversed. Since the Director's Point I is dispositive, we need not address his second point.

The judgment of the trial court is reversed, and the cause is remanded to the trial court for entry of a judgment reinstating the revocation of Phillips' driving privileges.

All concur.