James L. WILLIAMS, Respondent,

v.

DIRECTOR OF REVENUE, State of Missouri, Appellant.

No. WD 72147.

Missouri Court of Appeals, Western District.

March 8, 2011.

Jonathan H. Hale, Jefferson City, MO, for Appellant.

James O. Kjar, Warsaw, MO, for Respondent.

Before CYNTHIA L. MARTIN, P.J., JAMES EDWARD WELSH, and GARY D. WITT, JJ.

JAMES EDWARD WELSH, Judge.

The Director of Revenue revoked James L. Williams's driving license based on an alleged refusal to submit to a breath or blood test pursuant to section 577.041, RSMo. The circuit court reversed the Director's decision and reinstated Williams's driving privileges. The Director appeals, asserting that the circuit court's finding that Williams did not refuse to submit to a breath test was unsupported by substantial evidence and erroneously declared and misapplied the law. Because the circuit court erroneously declared and applied the law in this case, we reverse the circuit court's judgment and remand for further proceedings.

On August 15, 2009, the Director notified Williams that his driving privilege would be revoked for one year under § 577.041. Williams filed a petition for review on August 25, 2009, in the Benton County Circuit Court, and the matter was heard on January 4, 2010.

At the trial, the evidence submitted by the Director consisted solely of the Director's certified records. The records stated that, on August 14, 2009, at 10:18 p.m., Officer Chris Haney of the Warsaw Police Department was on patrol on Main

Street from Highway 7. Haney saw Williams traveling toward him on Main Street and observed Williams's car traveling to the far right side of the roadway (where vehicles are normally parked). Williams's vehicle then over corrected and crossed the center part of the roadway—to the point that Haney had to move to the right turning onto South Polk to avoid being hit. Haney turned around and pursued Williams's vehicle. Williams then drove on the left half of the roadway for a time before crossing back to the right.

Haney activated his emergency lights and stopped Williams's vehicle. When he approached Williams's vehicle, Haney asked Williams for identification, but Williams was not able to provide it. Haney did not notice an odor of alcohol, but he noticed that Williams's eyes were constricted, watery, bloodshot, and glassy; that Williams's speech was slurred; and that he was slow in answering questions. Williams denied having anything to drink or smoke that evening but stated that he was on prescription medications. Williams could not remember the names of the medications except for Lorazpam, which he described as a muscle relaxer.

When Haney asked Williams to get out of his vehicle, Haney noticed that Williams was staggering and stumbling. Haney had Williams sit in the patrol car. Thereafter, Haney verified through the Benton County Dispatch that Williams's driving license had been revoked. Haney then requested that Williams submit to field sobriety testing.

On the horizontal gaze nystagmus test, Haney noted that Williams's eyes tracked equally, had pupils of equal size, had no smooth pursuit, had distinct nystagmus at maximum deviation, and had "onset before forty five degrees with some white showing in both eyes." On the walk-and-turn test, Williams stopped while walking to steady himself, did not touch heel to toe, lost balance while walking, used his arms for balance, made an improper turn, and had an incorrect number of steps. Williams was able to repeat the alphabet without incident but said that he could not count backwards because he sees a psychiatrist. Based on the circumstances, Haney believed that Williams was intoxicated and arrested Williams for driving while revoked and driving while intoxicated.

At the police station, Haney read Williams his implied consent. At 11:05 p.m., according to Haney's incident report, Williams refused to take a breath and blood test. Haney then began a fifteen minute observation period and read Williams his *Miranda* rights. At 11:19 p.m., Haney asked Williams if he was still refusing "to take the test," to which Williams replied "What test?" Haney then printed an evidence ticket indicating "refused" from the Data Master machine.

▉ After the Director submitted the certified records of the Department of Revenue at the trial, the Director rested. Williams then moved for a directed verdict.[1] Williams contended that the Di-

---

1. A motion for directed verdict was not the appropriate motion in this court-tried case. *Spry v. Dir. of Revenue*, 144 S.W.3d 362, 367 (Mo.App.2004). When a plaintiff in a court-tried case completes the presentation of plaintiff's evidence, Rule 73.01(b) authorizes a defendant to "move by motion for a judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief." "Unlike a motion for directed verdict in a jury-tried case, a Rule 73.01(b) motion submits the case for judgment on the merits and requires the trial court to weigh the evidence and assess credibility." *Spry*, 144 S.W.3d at 367. Therefore, when a motion for directed verdict is inappropriately made in a court-tried case, we will treat the motion as one submitting the case for a decision on the merits pursuant to Rule 73.01(b). *Id.*

rector failed to satisfy her burden as to probable cause to arrest and as to whether there was a refusal. At the trial, this discussion took place between the circuit court and the parties about the refusal to submit to a test:

[WILLIAMS'S ATTORNEY]: ... More troubling is the so called refusal where he asked the question, what test. There was no expressed refusal of any test, expressed or implied. He was asking the question as to what test.

THE COURT: Well, where—I mean, it says at 2304 I read him his Implied Consent off the AIR form, and at approximately 2305 he refused to take a breath blood test.

[WILLIAMS'S ATTORNEY]: Three paragraphs down, Your Honor, is where—

THE COURT: Then he begins—

[WILLIAMS'S ATTORNEY]:—on (indiscernible) 2319—

THE COURT:—a 15–minute observation. I'm not sure why we're observing if we're not going to do the test.

[WILLIAMS'S ATTORNEY]: Which is the point, Your Honor, that—

THE COURT: So he reads him his Miranda rights. He says he understands Miranda. I'm a little confused as to what we're doing. I mean, it sounds to me like he asked him to take a blood and breath test. According to the officer he says he refuses. Then he does a 15–minute observation.

[WILLIAMS'S ATTORNEY]: If he refused, there'd be no necessity to do the—

THE COURT: And then—

[WILLIAMS'S ATTORNEY]:—15–minute—

THE COURT:—asks him again if he was still refusing to take the test.

[WILLIAMS'S ATTORNEY]: What test?

THE COURT: After he's asked him these other questions.

[WILLIAMS'S ATTORNEY]: And then it never indicates that Mr. Williams refused the test. It says, Mr. Williams stated what test. Then the machine spits out a refusal. It doesn't ever say refused to take the test.

THE COURT: Got smart machines. They can tell if you refused, I guess.

[WILLIAMS'S ATTORNEY]: And the Court's required to make its findings based upon the evidence before it and this particular report is inadequate. The State—pardon me, the Department of Revenue has the risk of not producing a live witness. That's what the case law says. In this case they didn't produce a live witness to support what they're trying to get read into the record. And since it's not there, there's no sufficient evidence, therefore the Court's required to find that the refusal did not occur.

THE COURT: Well, it is somewhat confusing. Am I—am I mistaken ... if the offer is made to take the test and the person refuses, we're done, aren't we?

[DIRECTOR'S ATTORNEY]: Yes.

THE COURT: I mean, we don't need a 15–minute observation if we're not going to take the test, do we?

[DIRECTOR'S ATTORNEY]: That's right. The Respondent's position is that the refusal had occurred by the time the other statement was made.

THE COURT: Now, say that again. By—

[DIRECTOR'S ATTORNEY]: That the—

THE COURT:—what the time what statement was made?

[DIRECTOR'S ATTORNEY]: That the refusal was complete before the observation period was started. They apparently were going to give him another chance to take it, but he'd already refused.

THE COURT: Well, I—I don't know. Maybe they think that cutting him some slack doing him a favor, but it—to me it just confuses the issue. I mean, I think they need to just say, you know, here's—here's the rules. Here's what happens if you don't take the test. Are you going to take the test? Yes or no. And, you know, I guess they are bound to give him a chance to talk to an attorney. I don't know. Did we do that? It said did you request an attorney prior to refusal and it's marked no. I don't know. I guess we can argue that it's surplusage. But once he's refused, the fact that he goes through this other stuff is—but then, the other thing is, is that—does he really believe he's refused or not. If he—if he's refused, why are we going through all the checklist and—

. . . .

... I'm not sure that I believe that the arrest was faulty so much as I think that it is confusing if we're going to play this game of how many times are we going to ask about the test and then does he understand what we're doing or not. And it looks like to me if we say are you going to take the test and he says no, I'm going to say okay, end of story. You've refused and we don't go any farther.

If we have him say no but then we continue to go through the procedure, then it looks like to me the onus is on the officer to make it clear that we're—that we're asking him to take the test again and I'm not sure that that would have been clear to him here. I mean, it would have helped him some if he would

have at—is he—does he ask Mr. Williams is he still refusing to give a breath or blood sample or does he want to be shown as a refusal. At least then we know that they're both on the same page.

Well, okay. Well, my feeling on this case is I think the arrest was righteous from what I can tell. I'm not going to fault that, but I think it is confusing as to whether he was—whether he refused or not, how many times we're going to ask to take the test. I'm going to find in favor of the Plaintiff.

The circuit court found that probable cause existed to arrest Williams but found that Williams did not refuse to submit a breath sample. The Director appeals.

■ In her sole point on appeal, the Director contends that the circuit court's finding that Williams did not refuse to submit to a breath test was not supported by substantial evidence and erroneously declared and misapplied the law.

■ We will affirm the circuit court's judgment in a driver's license revocation case unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Phillips v. Wilson,* 66 S.W.3d 176, 178 (Mo.App.2002). In reviewing the revocation of a driver's license for a refusal to submit to a chemical test, the circuit court determines only: "(1) whether the person was arrested; (2) whether the arresting officer had reasonable grounds to believe that the person was driving while intoxicated; and (3) whether the person refused to submit to the test." *Borgen v. Dir. of Revenue,* 877 S.W.2d 172, 174 (Mo.App.1994); § 577.041.2. The only issue on appeal is whether Williams refused the breath test.

The evidence presented at the trial reflects that, according to Haney's incident

report, Williams initially refused to submit to the breath test. Indeed, the circuit court acknowledged in its discussion about the refusal with the parties that Haney's report said that "at approximately 23:05[, Williams] refused to take a breath blood test." The court then expressed its confusion about what took place after that refusal. The court said, "I mean, it sounds to me like he asked him to take a blood and breath test. According to the officer he says he refuses. Then he does a 15–minute observation.... And then ... asks him again if he was still refusing to take the test." The court stated that "it is confusing if we're going to play this game of how many times are we going to ask about the test and then does [the driver] understand what we're doing or not."

The problem is that the circuit court was focusing on Williams's conduct subsequent to his alleged initial refusal to take a breath or blood test. In so doing, the circuit court erroneously declared that the onus was on the officer in this case to make it clear that he was asking Williams to take the test again and asking him if he was still refusing to give a breath or blood sample.

The facts in this case are similar to those in *Phillips v. Wilson*, 66 S.W.3d 176 (Mo.App.2002). In *Phillips*, when the driver was asked to consent to a breath test, he responded that he would not take the test. *Id.* at 177. The driver then asked the officer what he would do, and the officer told him that he should call his lawyer. *Id.* The driver responded that it was too late to call his lawyer. *Id.* The officer then asked the driver again if he wanted to refuse the test. *Id.* The driver then "said he would and then stated he wouldn't." *Id.* The Director revoked the driver's driving license for refusing to submit to a breath test. *Id.* at 177–78. The driver filed a petition for judicial review with the circuit court, and the only evidence presented at trial was the Director's certified records. *Id.* at 178. The circuit court found that ambiguities existed in the Director's records suggesting that the driver attempted to revoke his initial refusal. *Id.* The circuit court concluded that the driver had not refused the breath test. *Id.* The Director appealed to this court, and we reversed the circuit court's judgment. *Id.* at 178–79. We found that the ambiguities that the circuit court relied upon occurred after the initial unequivocal refusal. *Id.* at 179. We noted that "[t]he fact that a driver may change his mind after an initial refusal and consent to the test is of no consequence." *Id.* at 178.[2]

■ The same is true in this case. The ambiguities surrounding the officer's second request of Williams to submit to a breath test occurred after Williams's alleged initial refusal in this case. It was these ambiguities that caused the circuit court in this case to reverse the Director's revocation of Williams's driving license. But, as noted in *Phillips*, once a driver refuses to submit to a breath or blood test, even if the driver changes his mind and

**2.** In *Phillips*, the court stated: "It is well-settled that once a driver makes an informed refusal to submit to a breath test or other chemical test, 'none shall be given.'" *Phillips*, 66 S.W.3d at 178 (citations omitted). Prior to 2010, section 577.041.1 said: "If a person under arrest, or who has been stopped pursuant to subdivision (2) or (3) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577. 020, then *none shall be given* and evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024, 565.060, or 565.082, RSMo, or section 577.010 or 577.012." The General Assembly amended section 577.041 in 2010 and deleted the language "none shall be given." Because the incident causing the revocation of Williams's driving license occurred in August 2009, the 2010 amended statute does not apply.

agrees to take the test later, the driver is not entitled to reinstatement of his driving license. *Id.* at 179.

We, therefore, reverse the circuit court's judgment and remand for further proceedings. In reversing the circuit court's determination, we do not mean to suggest that the circuit court is obligated to believe the Director's evidence that Williams refused to submit the breath or blood test.[3] Credibility determinations are within the circuit court's discretion, and we defer to the circuit court's determinations of credibility. *Hagler v. Dir. of Revenue,* 223 S.W.3d 907, 909 (Mo.App.2007).[4] We are merely saying that the circuit court erroneously declared the law when it suggested that the ambiguities that occurred after the alleged refusal were grounds to reverse the Director's revocation of Williams's driving license. We also note that, because the circuit court ruled upon the merits of this case after the Director rested and based upon Williams's motion for directed verdict,[5] on remand Williams should be given the opportunity to present evidence, if he so chooses.

All concur.

---

3. The State asserts that it is evident that the circuit court believed the facts in Haney's incident reports. The court's references to Haney's incident report, however, merely acknowledge that Haney made those statements. The circuit court never implied whether or not it believed these statements. The court's focus in making its determination was what occurred after the alleged initial refusal.

4. We also recognize that in *White v. Director of Revenue,* 321 S.W.3d 298 (Mo. banc 2010), the Missouri Supreme Court emphatically stated that in judicial review of an administrative suspension or revocation of a person's license under section 302.535 that the burden of production and the burden of persuasion always remains with the Director. *Id.* at 304. As such, "[w]hen the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party." *Id.* at 305 (citation omitted). Moreover, " '[g]enerally, the party not having the burden of proof on an issue need not offer any evidence concerning it.' " *Id.* (citation omitted).

5. *See* footnote 1.