Roxanne ALLISON, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

WD 79841

Missouri Court of Appeals, Western District.

OPINION FILED: August 1, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied September 5, 2017

Andrew S. Garnett, Mexico, MO, for appellant.

Rachel M. Jones, Jefferson City, MO, for respondent.

Before Special Division: Zel M. Fischer, Special Judge, Presiding, Karen King Mitchell, Judge and Cynthia L. Martin, Judge

Cynthia L. Martin, Judge

Roxanne Allison ("Allison") appeals from a judgment sustaining the revocation of her driving privileges based on her refusal to submit to a chemical test of her breath to determine the alcohol content of her blood. We affirm.

## Factual and Procedural Background[1]

On November 5, 2015, Trooper Shaun Brazas ("Trooper Brazas") arrested Allison for driving while intoxicated. Trooper Brazas transported Allison to the Callaway County Jail. Upon arriving at the jail, and while Allison remained handcuffed in the patrol car, Trooper Brazas read Allison the implied consent portion of the Alcohol Influence Report. Specifically, Trooper Brazas told Allison that he had reasonable grounds to believe that she was driving a motor vehicle while in an intoxicated condition; that to determine the alcohol content of her blood, he was requesting her to submit to a chemical test of her breath; that if she refused to take the breath test, her driver's license would be immediately revoked for one year; and that evidence of a refusal to take the test could be used against her at prosecution in a court of law.

Trooper Brazas then asked Allison, "Having been informed for [sic] the reasons for requesting the test, will you take the test, yes or no?" Allison responded by asking for a moment.

After a brief pause, Allison said that she could not believe the trooper was doing this to her. Trooper Brazas repeated his question, "Having been informed for [sic] the reasons for requesting the test, will you take the test, yes or no?" Allison asked for another moment to answer. After another pause, Trooper Brazas asked, "Yes or no?" again, and told Allison that it would be a refusal if she did not answer. He repeated, "Yes or no?" Allison did not respond "yes" or "no."

Trooper Brazas asked Allison if she understood the consequences of a refusal to submit to a breath test. After she stated that she maybe did not understand, Trooper Brazas repeated the implied consent warning. Again, he asked, "Will you take the test, yes or no?" Allison replied that her face itched. Trooper Brazas again repeated the question. Allison asked whether her license would be taken for a year if she did not take the test, and Trooper Brazas confirmed that it would.

Following another brief pause, Trooper Brazas again asked if Allison would take the test, "Yes or no?" He also stated that

1. We view the facts in the light most favorable to the trial court's judgment. *Long v. Dir. of Revenue,* 65 S.W.3d 545, 548 (Mo. App. W.D. 2001) (quoting *Hawk v. Dir. of Revenue,* 943 S.W.2d 18, 20 (Mo. App. S.D. 1997)).

he was not trying to trick her. Allison replied that she knew he was not trying to trick her, and that her face itched. Trooper Brazas asked Allison again, "Will you take the test, yes or no?" He also restated that if she failed to answer, then he would treat the failure to answer as a refusal. Allison replied that she was not trying to fail to answer. Trooper Brazas replied, "So, yes or no?" Allison did not give a yes-or-no response.

Trooper Brazas indicated an intent to deem Allison's non-response as a refusal to submit to a breath test. He began to exit the patrol car. Allison tried to explain, "That's not what I said." Trooper Brazas again asked, "Yes or no?" Allison did not respond with a yes-or-no answer.

Approximately three to four minutes transpired between Trooper Brazas's initial request that Allison submit to a breath test and when he indicated his intent to deem her non-response a refusal. During that period of time, Allison never stated that she would or would not take the requested test. Allison never requested the opportunity to contact an attorney.[2]

As a result of Allison's deemed refusal to submit to the requested breath test, the Director of Revenue ("Director") revoked Allison's driving privileges for one year pursuant to 577.041.[3] Allison filed a petition for review of her license revocation. She and Trooper Brazas testified at a hearing on the matter. Dashboard camera and in-car video of Allison's arrest was submitted into evidence. The trial court entered its judgment sustaining the revo-cation of Allison's driving privileges, finding that she was offered a breath test and refused same.

This timely appeal follows.

## Standard of Review

■ "In a driver's license revocation case, the trial court's judgment 'will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Rader v. Dir. of Revenue*, 490 S.W.3d 778, 779 (Mo. App. W.D. 2016) (quoting *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010)). "When the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." *White*, 321 S.W.3d at 308. "A trial court is free to disbelieve any, all, or none of that evidence." *Id.*

## Analysis

■ In her sole point on appeal, Allison argues that the trial court erred in denying her petition for review of the revocation of her driving privileges because the judgment "erroneously declared and applied the law" as Allison did not refuse to submit to a chemical breath test under the circumstances because not enough time elapsed to deem her non-response a refusal. Though her point relied on is framed in terms of legal error, it is plain from the argument portion of the brief that Allison is instead contending that "there was not substantial evidence presented at trial that

---

**2.** "[T]he right to contact an attorney is triggered only if the driver specifically requests to talk to his lawyer." *Akers v. Dir. of Revenue*, 193 S.W.3d 325, 328 (Mo. App. W.D. 2006). Trooper Brazas had no obligation to inform Allison that she had the right to contact an attorney in connection with the statutorily required informed consent warning. *Norris v. Dir. of Revenue*, 304 S.W.3d 724, 726 (Mo. banc 2010). However, Allison had been informed of her right to counsel by virtue of the *Miranda* warning Trooper Brazas was required to give Allison at the time of her arrest.

**3.** All statutory references are to RSMo 2000 as supplemented through the date of Allison's arrest, unless otherwise indicated.

[Allison] refused to consent to a chemical test of her breath." [Appellant's Brief, p. 13] "To prevail on the substantial-evidence challenge, [Allison] must demonstrate that there is no evidence in the record tending to prove a fact that is necessary to sustain the circuit court's judgment as a matter of law." *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014). Allison has not sustained this burden.

■ Pursuant to Missouri's implied consent law, "[a]ny person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to . . . a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood" under certain circumstances, including if they are arrested on reasonable grounds to believe they were driving while intoxicated. Section 577.020.1(1). "If a driver refuses to submit to chemical analysis to determine [her] blood alcohol content, that driver's license will be subject to revocation pursuant to section 577.041." *Rader*, 490 S.W.3d at 779. However, "[r]evocation is conditioned upon an officer making a 'statutorily sufficient "request"' that a driver submit to chemical testing." *Mayfield v. Dir. of Revenue*, 100 S.W.3d 847, 850 (Mo. App. S.D. 2003) (quoting *McMaster v. Lohman*, 941 S.W.2d 813, 816 (Mo. App. W.D. 1997)). The content of a statutorily sufficient request is described in section 577.041.1, which provides that:

> [t]he request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test.

If a driver's license is revoked based upon refusal to submit to a requested test, the driver may petition for a hearing before a circuit or associate circuit court in order to review the license revocation. Section 577.041.4. "At the hearing, the Director has the burden of proving all the requisite elements for upholding revocation." *Kotar v. Dir. of Revenue*, 169 S.W.3d 921, 924 (Mo. App. W.D. 2005). The Director must prove the following by a preponderance of the evidence: "(i) that the person was arrested or stopped; (ii) that the arresting officer had reasonable grounds to believe that the person was operating a motor vehicle under the influence of drugs or alcohol; and (iii) that the person refused to submit to chemical analysis." *Rader*, 490 S.W.3d at 779 (citing section 577.041.4).

Allison does not challenge that she was arrested or that Trooper Brazas had reasonable grounds to believe that she was driving while intoxicated. Allison does not challenge that Trooper Brazas made a statutorily sufficient request that she submit to a chemical breath test. Allison challenges only the determination that her non-response to Trooper Brazas's request constituted a refusal.

■ "[A] refusal to submit to a chemical test need not be shown by the driver's express refusal upon the initial request." *Hursh v. Dir. of Revenue*, 272 S.W.3d 914, 917 (Mo. App. W.D. 2009) (quoting *Hawk v. Dir. of Revenue*, 943 S.W.2d 18, 20 (Mo. App. S.D. 1997)). "A 'refusal' occurs when a person fails, of his or her own volition, to do what is necessary in order for the test at issue to be performed." *Bruce v. Dep't of Revenue*, 323 S.W.3d 116, 121 (Mo. App. W.D. 2010). "The issue of whether a driver has refused to submit to a chemical analysis test is a question of fact to be decided by the trial court." *Rader*, 490 S.W.3d at 780; *accord Hursh*, 272 S.W.3d at 917; *Honeyfield v. Dir. of Revenue*, 140 S.W.3d 192, 195 (Mo. App. S.D. 2004).

Here, the trial court found that Allison refused to submit to the requested chemical breath test. Though the trial court's judgment does not explain this conclusion, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c); *see Harvey v. Dir. of Revenue*, 371 S.W.3d 824, 828 (Mo. App. W.D. 2012) (en banc).[4] Furthermore, "[w]e will affirm the trial court's judgment on any basis supported by the record." *Harvey*, 371 S.W.3d at 828 (quoting *Hirsch v. Ebinger*, 334 S.W.3d 695, 697 (Mo. App. E.D. 2011)).

The record indicates that Trooper Brazas asked Allison repeatedly to respond, "yes" or "no," to whether she would agree to take the requested chemical breath test. The record indicates that Allison never answered Trooper Brazas's question, and instead either remained silent, asked for a moment, exclaimed that she could not believe the Trooper was doing this to her, complained that her face was itching, or asked for clarification that her license would be revoked if she refused. Approximately four minutes elapsed between Trooper Brazas's first request that Allison submit to the chemical breath test and when he indicated his intent to deem her refusal to respond a refusal to submit. This evidence, which the trial court was free to believe, constitutes substantial evidence that Allison refused to submit to the requested chemical breath test. *See State v. Caines*, 427 S.W.3d 305, 308 (Mo. App. E.D. 2014) (holding that a driver demonstrated his refusal by giving non-responsive answers to a request for a breath test, ignoring a request for a yes-or-no answer, and never taking the test); *State v. Foster*, 959 S.W.2d 143, 147 (Mo. App. S.D. 1998)

(finding a voluntary refusal to take a breath test where the driver "continued to respond with the words 'no comment' after being told that would be considered a refusal"); *Beach v. Dir. of Revenue*, 188 S.W.3d 492, 496 (Mo. App. W.D. 2006) (holding that "[a] qualified or conditional consent is tantamount to a refusal, except where a driver qualifies a refusal on his having an opportunity to contact an attorney.").

Allison disagrees. She argues that several factors must be considered to determine if a person's failure to respond to a request to submit to chemical testing can be deemed a refusal. Specifically, Allison argues that the following are determinative factors: (i) whether it would be possible to immediately conduct the requested chemical test at the time the implied consent warning is given; and (ii) whether the arrestee would have had the ability to immediately contact an attorney had an attorney been requested. Based on these factors, Allison argues that because Trooper Brazas gave her the implied consent warning while she was handcuffed inside a patrol car, four minutes is too short an amount of time to permit treating her non-response as a deemed refusal to submit to the requested breath test. Allison theorizes that unless the implied consent warning is given in a location where the test can be immediately administered if consent is given, and where an attorney can be immediately contacted if a request for an attorney is made, more time must be afforded to an arrestee before non-response can be deemed a refusal.

■ Allison cites no authority for her argument, preserving nothing for our review. "Failure to cite relevant authority supporting [a] point or to explain the fail-

---

**4.** All Rule references are to *Missouri Court Rules, Volume I—State, 2016* except as other-

wise noted.

ure to do so preserves nothing for review." *Goudeaux v. Bd. of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 516 (Mo. App. W.D. 2013) (quoting *Patterson v. Waterman*, 96 S.W.3d 177, 179 (Mo. App. S.D. 2003)). Moreover, Allison fails to explain the logical or legal relationship between where the implied consent warning is given and an arrestee's volitional ability to answer "yes" or "no" when asked whether she will agree to take a requested chemical test. "An argument should show how principles of law and the facts of the case interact." *Snyder v. Snyder*, 142 S.W.3d 780, 783 (Mo. App. E.D. 2004) (discussing Rule 84.04(e)).

We conclude that the factors Allison has identified are not *per se* determinative of whether an arrestee's non-response constitutes a refusal to submit to chemical testing. "A 'refusal,' for purposes of [section] 577.041, means declining of one's own volition to submit to a chemical test authorized by [section] 577.020 when requested by an officer to do so." *Kotar*, 169 S.W.3d at 925. Though Allison was handcuffed and in a patrol car when the implied consent warning was given, neither circumstance has been demonstrated to have influenced her ability to answer "yes" or "no" to Trooper Brazas's question asking whether she would take the requested chemical breath test.

Point denied.

## Conclusion

The judgment of the trial court is affirmed.

All concur