Mark D. Pfeiffer, Judge
Ms. Veronica Mullin ("Mullin") appeals from the judgment of the Circuit Court of Boone County, Missouri ("trial court"), upholding the Director of Revenue's ("Director") suspension of Mullin's driver's license under section 302.505.1 after her arrest for driving a motor vehicle while intoxicated ("DWI").[1] Mullin contends that law enforcement provided her with false and misleading information upon which to base her decision as to whether to submit to a chemical test of her breath, rendering the breath test result inadmissible. The judgment of the trial court is affirmed.
Factual and Procedural History[2]
Columbia, Missouri, Police Officer Turner Schuster was working in a special enforcement capacity at a sobriety checkpoint when at approximately 12:45 a.m. on August 13, 2016, Mullin drove her vehicle into the checkpoint. When she rolled down her window, Officer Schuster detected a strong odor of intoxicants coming from the vehicle. Mullin's eyes were watery and bloodshot, and she admitted to having consumed alcohol (prior to arrest, she admitted having two drinks; post-arrest, she admitted having three drinks). Officer Schuster asked her to exit the vehicle, and he took her to the sidewalk to Officer Mark Hoehne, the field sobriety testing officer for the checkpoint.
When Officer Hoehne made contact with Mullin, he detected a strong odor of intoxicants; her eyes were watery, glassy, and bloodshot; and her speech was slurred. When Officer Hoehne administered the horizontal gaze nystagmus test, Mullin exhibited all six clues of impairment. He also noticed that Mullin swayed while he was administering the test. He asked her to take a preliminary breath test, but she *629 refused. Officer Hoehne concluded that Mullin was under the influence of intoxicants. Despite her resistance, Officer Hoehne, assisted by Officer Schuster, handcuffed Mullin and arrested her for DWI. Mullin requested an attorney.
The officers took Mullin to the mobile response unit. Officer Hoehne informed her that since she requested an attorney, she would be given twenty minutes to contact one.[3] He advised her of her rights under the Missouri Implied Consent Law.[4] Immediately, Officer Schuster began a fifteen-minute observation period coterminous with the twenty-minute section 577.041.1 time period, during which Mullin made several telephone calls asking for advice but was unable to speak with an attorney.[5] Mullin asked the officers numerous questions, including questions regarding the consequences of consenting or refusing to consent to a breath test:
Mullin: I have no information, I'm sorry. I don't know what I'm supposed to do.
Officer Schuster: Well, it's, uh, your decision....
Mullin: Okay, so if I refuse to have the breathalyzer, then I have my license revoked for a year, and if I-
Officer Schuster: Yes, ma'am. And let me just explain. If you refuse to submit to a chemical test of your breath, we will apply for a search warrant for your blood, and it will likely be granted. You will then be taken to the hospital where your blood will be drawn. You will be charged with a state misdemeanor instead of a city infraction and your license will be immediately revoked for one year. So, you would be charged with a more serious crime. Your license will be suspended for longer, and Officer Hoehne will apply for a search warrant for your blood and go from there.
After twenty minutes, Officer Hoehne again advised Mullin of her rights under the Implied Consent Law. Mullin continued to ask the officers questions regarding what would happen if a blood test or breath test came back above or below 0.08%. The officers informed her that the charging decision was the prosecutor's, not theirs. Mullin asked, "If I refuse, what happens next? Do I go to the hospital and get a blood test?" Officer Hoehne responded:
No, it's about a two-hour process to apply for and receive a search warrant. And then we go to the hospital, that takes probably anywhere from thirty minutes to an hour, depending on how busy the emergency room is. Then, we go back to the department, fingerprint and photograph-
*630 Mullin asked the officers several more times about what she should do:
Mullin: So, can you tell me honestly, is refusing to take the test better for me-
Officer Schuster: I cannot give you legal advice.
Mullin: -if I don't believe I'm under the influence?
Officer Schuster: I cannot give you legal advice.[6]
The officers informed Mullin that her time to contact an attorney had expired and that she needed to give them a yes or no answer as to whether she would submit to a breath test. Mullin agreed to take a breath test, which Officer Hoehne, a certified breath test operator, conducted. Mullin's blood alcohol content was determined to be .142% by weight.
The Director subsequently suspended Mullin's driver's license under section 302.505. Mullin requested an administrative hearing before the Missouri Department of Revenue ("Department"). The Department upheld the suspension. Mullin filed a petition for a trial de novo pursuant to section 302.535. At trial, the Director presented the testimony of Officer Schuster and Officer Hoehne and certified copies of Mullin's Missouri driver record, the Department's notice of suspension, Officer Hoehne's Alcohol Influence Report, a copy of the ticket charging Mullin with driving while intoxicated in violation of Columbia Ordinance 14-612, the maintenance reports for the breath test instrument, Officer Hoehne's arrest report, and Officer Schuster's and Officer Hoehne's body camera videos. Mullin's counsel objected to the admission of the breath test result on the grounds that her consent was not voluntary:
Officer Schuster informed her before she consented to the breath test that it would be a less serious offense if she consented to the breath test, that a search warrant would be granted if she refused, that she wouldn't get out of jail until 7:00 in the morning if she refused, and that it was a city or a municipal infraction if she consented, and it was a county or state misdemeanor if she refused.
The Director responded that Mullin's objection was not "relevant to this proceeding." The trial court overruled Mullin's objection. Mullin testified on her own behalf. Following trial, the trial court entered judgment upholding the administrative suspension of Mullin's driver's license. Mullin's motion to reconsider was denied by the trial court.
Mullin timely appealed.
Standard of Review
The trial court's judgment in a driver's license suspension case under section 302.535 is reviewed on appeal as any court-tried civil case. White v. Dir. of Revenue , 321 S.W.3d 298, 307 (Mo. banc 2010). We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. at 307-08 (citing Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976) ). The Director has the burden of proof at trial. Id. at 304. Our review is confined "to determining whether substantial evidence exists to support the trial court's judgment." Id. at 309.
Analysis
In Mullin's sole point, she asserts that the trial court erred in upholding the Director's *631 suspension of her driving privileges because law enforcement provided her with false and misleading information upon which to make a decision as to whether to submit to a chemical test in violation of her right to due process and in contravention of the Missouri Implied Consent Law. Specifically, Mullin avers that Officer Schuster falsely informed her that if she consented to a breath test she would be charged with an infraction, and if she refused to consent to a breathalyzer test she would be charged with a more serious crime.
When reviewing a license suspension under section 302.505.1, the trial court is to determine whether the Director established by a preponderance of the evidence that: "(1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's blood alcohol concentration exceeded the legal limit of .08 percent." White , 321 S.W.3d at 309 n.11. In this appeal, Mullin does not challenge the trial court's findings on either of those issues. Rather, she claims that she did not make a voluntary, intentional, and informed decision to submit to the breathalyzer test because of representations made by Officer Schuster, rendering the breath test result inadmissible.
Pursuant to Missouri's Implied Consent Law, "[a]ny person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to ... a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood" under certain circumstances, including if the person is arrested on reasonable grounds to believe the person was driving while intoxicated. § 577.020.1(1). "If a driver refuses to submit to chemical analysis to determine [her] blood alcohol content, that driver's license will be subject to revocation pursuant to section 577.041." Allison v. Dir. of Revenue , 525 S.W.3d 127, 130 (Mo. App. W.D. 2017) (internal quotation marks omitted). However, "[r]evocation is conditioned upon an officer making a statutorily sufficient 'request' that a driver submit to chemical testing." Id. (internal quotation marks omitted). Section 577.041.1 describes the content of a statutorily sufficient request:
[t]he request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test.
"The purpose of the warning provided in section 577.041.1 is to inform an apparently inebriated driver of the consequences that follow a refusal to consent to a chemical test to determine blood alcohol content." Teson v. Dir. of Revenue , 937 S.W.2d 195, 197 (Mo. banc 1996). "Ignoring the internal inconsistency of a system that demands that inebriated persons be given information from which to render an informed decision, the statute demands that a law enforcement officer provide an arrestee with information upon which the arrestee may make a voluntary, intentional[,] and informed decision as to whether or not to submit to the chemical test." Id. "If the purpose of the warning is to provide information, a warning is sufficient for purposes of due process unless the words used either (1) fail to inform the arrestee of all of the consequences of refusal or (2) mislead the arrestee into believing that the consequences of refusal are different than the law actually provides." Id. "In each of these instances, the warning fails because it prejudices the arrestee's decisional process and, therefore, renders the arrestee's decision uninformed. Uninformed decisions are non-consensual." Id.
*632 The court in Teson adopted an actual prejudice standard when reviewing the sufficiency of the "implied consent" warning. Under the actual prejudice standard, the issue is "whether an arrestee's decision to refuse to submit to a chemical test is an informed one," so it must be determined "whether the warning was so deficient as actually to prejudice the arrestee's decision-making process." Id. at 196. A court "must view all the evidence to determine actual prejudice." Brown v. Dir. of Revenue , 34 S.W.3d 166, 174 (Mo. App. W.D. 2000).
The information Mullin received neither "omitted a material bit of information critical to [her] ability to decide [nor] misled [her] by suggesting that the consequences of [her] actions were different than the law provided." Teson , 937 S.W.2d at 198. Mullin does not challenge that Officer Hoehne made two statutorily sufficient requests that she submit to a breathalyzer test and that Mullin understood from the warnings that her license would be revoked for one year if she refused. Instead, she focuses on one of Officer Schuster's responses to her numerous questions concerning the consequences if she refused to submit to a chemical test of her breath: "You will be charged with a state misdemeanor instead of a city infraction and your license will be immediately revoked for one year." Mullin claims that Officer Schuster's "false and coercive statements and promises" violated her right to due process because she was promised a mitigation of punishment in exchange for her consent to a breath test.
At trial, when the Director asked Officer Schuster whether he told Mullin that if she submitted to a breathalyzer then any offense would be charged as an infraction, the following colloquy ensued:
A. From-as best as I remember, my explanation to her was that if she did not submit to a chemical test of her breath, it would be a state-it would be a state charge; whereas, if she did submit to a chemical test of her breath and she had no priors, it would be a city violation. Due to the number of times that Ms. Mullin required me or asked me to explain things to her, I tried to explain things in multiple ways to her.... I may have misspoke and referred to the DWI as an infraction, but the multiple other explanations I gave her, I believe properly explained the situation to her.
....
Q. Okay. Now as a part of explaining Ms. Mullin's rights to her, had you informed her erroneously that if she submitted to a breath test it would be a city infraction, would you consider her relying on that advice to be-to be in any way reflective of her ability to assert her rights?
A. I did not give Ms. Mullin advice. She was ... allowed to contact an attorney....
On recross-examination, Officer Schuster reiterated that "I do not give advice, I give explanations." When asked whether he explained to Mullin that a state misdemeanor is a more serious crime than an infraction, he answered, "That a state misdemeanor is more serious than a city ordinance [violation], yes."
While Officer Schuster did misspeak in calling a municipal DWI ordinance violation an "infraction" rather than a misdemeanor, he did not make promises to Mullin regarding punishment. He merely explained to her that in his experience, drivers who refused to take the breathalyzer test were charged with a state violation while drivers who provided a breath sample were charged with a municipal violation. The officers informed Mullin that the charging decision was the prosecutor's, not theirs.
*633 Section 577.041.1 "requires only that the officer inform the arrestee of the consequences for refusing to submit to the examination as well as why the test is being administered." Collins v. Dir. of Revenue , 691 S.W.2d 246, 252 (Mo. banc 1985). "Nothing in [section 577.041.1] requires the arresting officer to inform the defendant of the multiplicity of consequences which might occur if the driver submits to the examination." Id. (emphasis added). See also Eyberg v. Dir. of Revenue , 935 S.W.2d 376, 378 (Mo. App. S.D. 1996) ("Here, [Eyberg] was plainly warned that his license would be revoked if he refused the test. This warning conveyed a certain consequence if the test was refused.... Thus, [ Eyberg ] chose to avoid revocation, whether it was immediate or later, by submitting to the test. We believe the warning [Eyberg] received, although not perfect, sufficiently complied with § 577.041.1 to allow introduction of the breathalyzer test.").
It is uncontroverted that the officers gave Mullin the opportunity to consult with an attorney and that Officer Hoehne read the implied consent warning to Mullin twice, informing her of all the consequences of a refusal to submit a breath sample. See Teson , 937 S.W.2d at 197. Officer Schuster's statement of the consequences of a refusal-that if she refused to submit to a chemical test of her breath, "[y]ou will be charged with a state misdemeanor instead of a city infraction and your license will be immediately revoked for one year"-did not mislead Mullin into believing that the consequences of refusal were different than the law actually provides. See id. Accordingly, the warning was sufficient for the purposes of due process. See id. The Director met his burden to show that Mullin was not prejudiced by an alleged violation of section 577.041 in one of Officer Schuster's exchanges with Mullin. There was substantial evidence to support the trial court's judgment upholding the Director's suspension of Mullin's driver's license.
Point denied.
Conclusion
The judgment of the trial court is affirmed.
Zel M. Fischer, Special Judge, and Gary D. Witt, Judge, concur.

All statutory references are to the Revised Statutes of Missouri 2000, as updated through the 2015 Noncumulative Supplement.

On appeal from a trial court's judgment in a trial de novo pursuant to section 302.535.1, "[t]he evidence and all reasonable inferences therefrom are viewed in the light most favorable to the judgment and all contrary evidence and inferences are disregarded." O'Rourke v. Dir. of Revenue , 409 S.W.3d 443, 446 (Mo. App. E.D. 2013) (citing Dillon v. Dir. of Revenue , 999 S.W.2d 319, 322 (Mo. App. W.D. 1999) ).

Section 577.041.1 provides in pertinent part: "If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney."

Officer Hoehne read the implied consent warning from the Alcohol Influence Report:
You are under arrest[,] and I have reasonable grounds to believe you were driving a motor vehicle while you were in an intoxicated or drugged condition. To determine the alcohol or drug content of your blood, I am requesting you submit to a chemical test of your breath. If you refuse to take the test, your driver['s] license will immediately be revoked for one year. Evidence of your refusal to take the test may be used against you in prosecution in a court of law. Having been informed of the reasons for requesting the test, will you take the test?

"[W]hen a person has requested an attorney, the 20-minute time period in section 577.041.1 begins immediately after the officer has informed the driver of the implied consent law, irrespective of whether the driver requested an attorney before or after an officer informs the person of the implied consent law." Norris v. Dir. of Revenue , 304 S.W.3d 724, 727 (Mo. banc 2010).

The better practice for law enforcement officers in this scenario is to read the Implied Consent Warning (which was done) and, when inquiries along the lines of Mullin's repeated questions arise, simply advise the person in custody that the officers cannot provide legal advice to the person-nothing more and nothing less.