

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | | |
|---|---|---|---|
| KRISTIN L. HOWE, | ) | No. ED106315 | |
| | ) | | |
| Respondent, | ) | Appeal from the Circuit Court | |
| | ) | of Ralls County | |
| vs. | ) | | |
| | ) | Honorable David C. Mobley | |
| DIRECTOR OF REVENUE, | ) | | |
| STATE OF MISSOURI | ) | | |
| | ) | | |
| Appellant. | ) | FILED: February 13, 2019 | |

## Introduction

The Director of Revenue (the "Director") appeals from the circuit court's judgment

reinstating the driving privileges of Kristin L. Howe ("Howe") following revocation of Howe's

license for refusing to submit to a chemical test. The Director argues the circuit court erred in

reinstating Howe's driving privileges because Howe refused the law enforcement officer's

request to submit to a blood test. Because the officer did not give Howe the required implied

consent warning for the blood test, the officer's request was insufficient under Section

577.041.2.[1] As a result, the Director cannot show Howe validly refused to submit to a properly

requested blood test. Because a valid refusal was required to uphold Howe's license revocation,

we affirm the judgment of the circuit court.

---

[1] All statutory references are to RSMo (2016).

## Factual and Procedural History

The Director raises two points on appeal. Because we find the second point dispositive to this appeal, we review only the facts pertinent to this point.

The evidence relevant to the dispositive point on appeal is as follows: Trooper Adam Hitt ("Trooper Hitt") stopped Howe for failure to dim her lights to oncoming traffic. Trooper Hitt observed that Howe had bloodshot, glassy eyes and an odor of alcohol. Howe admitted to having consumed one drink. Subsequently, Trooper Hitt conducted field sobriety tests to determine whether Howe was driving under the influence of alcohol ("DWI"). Trooper Hitt then arrested Howe for DWI.

At the sheriff's office, Trooper Hitt read Howe the implied consent warning for a breath test as contained in the Alcohol Influence Report ("AIR") from his patrol laptop. Trooper Hitt manually checked the boxes of the AIR as he read the consent to Howe. Trooper Hitt first read the contents of Box 1 to Howe: "You are under arrest and I have reasonable grounds to believe you were driving a motor vehicle while you were in an intoxicated or drugged condition." Trooper Hitt next read the contents of Box 2 to Howe. Box 2 ends with three blank boxes that the officer completes by identifying the test or tests requested. Here, Box 2 reads: "To determine the alcohol or drug content of your blood, I am requesting you submit to a chemical test of your breath."

| IMPLIED CONSENT TIME ADVISED: 0151 (MIL) | FOR USE IN ZERO TOLERANCE ONLY |
|---|---|
| ☑ 1. You are under arrest and I have reasonable grounds to believe you were driving a motor vehicle while you were in an intoxicated or drugged condition. | ☐ 1. You have been stopped and are under the age of 21; I have reasonable grounds to believe that you were driving a motor vehicle with a blood alcohol content of .020% or more. |
| ☑ 2. To determine the alcohol or drug content of your blood, I am requesting you submit to a chemical test of your ☑ Breath ☐ Blood ☐ Other _____ (Check no more than two) | |
| ☑ 3. If you refuse to take the test(s), your driver license will immediately be revoked for one year. | |
| ☑ 4. Evidence of your refusal to take the test(s) may be used against you in prosecution in a court of law. | |
| ☑ 5. Having been informed of the reasons for requesting the test(s), will you take the test(s)? ☑ YES ☐ NO Time: 0152 (MIL) | |
| If subject refused test(s), was an attorney requested prior to refusal? ☐ YES ☐ NO If yes, time subject asked for attorney: | |

2

Trooper Hitt read Howe the remaining boxes of the implied consent warning as those warnings related to a breath test. The warnings advised Howe that a refusal to submit to the test would result in her license being revoked for one year. Howe submitted to the breath test. Trooper Hitt administered the breath test using an Intox DMT device three times. The tests on Howe's breath samples were unsuccessful due to radio frequency interference.[2]

Trooper Hitt then asked Howe to submit to a blood draw at Hannibal Regional Hospital to determine her blood alcohol content. Trooper Hitt did not read to Howe any implied consent warning for the blood test. Trooper Hitt did not inform Howe that her refusal to submit to the blood test would result in the revocation of her license. Howe did not agree to allow her blood to be drawn for purposes of determining the alcohol level in her blood. Trooper Hitt then personally served Howe with a notice of license revocation on behalf of the Director for failure to submit to a chemical test.

Howe petitioned the circuit court for review of her license revocation. The circuit court conducted a trial and entered judgment in favor of Howe, finding that there was no probable cause for Howe's arrest. The circuit court further found that "[b]ecause [Howe] was not warned that her driver's license would be revoked for refusal to submit to a blood test, her refusal is not valid." The circuit court then set aside the revocation of Howe's driver's license.

The Director now appeals.

<u>Points on Appeal</u>

The Director raises two points challenging the circuit court's reinstatement of Howe's driving privileges. In Point One, the Director claims the circuit court erred in finding the officer lacked probable cause to arrest Howe for driving while intoxicated, because the officer made

---

[2] As noted by the circuit court, it was undisputed that Howe did not refuse to submit to a breath test and that Howe was not at fault for any failure of the breathalyzer to produce a valid test result.

observations of Howe's insobriety despite improperly administering the sobriety tests. In Point Two, the Director maintains that Trooper Hitt was not required to repeat the implied consent warning to Howe when he asked her to submit to the blood test. Accordingly, the Director contends that the circuit court erred in finding Howe did not knowingly refuse to submit to Trooper Hitt's request for the blood test.

## Standard of Review

As in other court-tried cases, we will uphold the judgment of the circuit court in a driver's license revocation case unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously applies the law. Hearne v. Dir. of Revenue, 559 S.W.3d 66, 68 (Mo. App. E.D. 2018) (citing White v. Dir. of Revenue, 321 S.W.3d 298, 307–08 (Mo. banc 2010)); see also Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the circuit court on issues of fact and credibility. White, 321 S.W.3d at 308. We will affirm the circuit court's judgment in a driver's license revocation case under any reasonable theory supported by the evidence. Mayfield v. Dir. of Revenue, 100 S.W.3d 847, 848 (Mo. App. S.D. 2003).

The Director bears the burden of establishing a prima facie case for license revocation by a preponderance of the evidence. Hearne, 559 S.W.3d at 68; see also White, 321 S.W.3d at 307. Specifically, for a circuit court to uphold a driver's license revocation for failure to submit to chemical testing, the Director must show that: (1) the driver was arrested; (2) the officer had probable cause to believe the driver was driving while intoxicated; and (3) the driver refused to submit to the test. Section 302.574.4;[3] Davis v. Dir. of Revenue, 416 S.W.3d 826, 829 (Mo.

---

[3] We note that the provisions previously found in Section 577.041.4 are now found in Section 302.574.4 (2016).

4

App. S.D. 2013). The Director's failure to prove any one of the three elements requires reinstatement of the driver's license. Section 302.574.5; Mayfield, 100 S.W.3d at 849.

Discussion

The Director challenges two elements of Section 302.574.4—whether the officer had probable cause to arrest Howe for DWI (Point One) and whether Howe refused to submit to the blood test (Point Two). The Director must prevail on both points for us to reverse the circuit court's reinstatement of Howe's driving privileges. Section 302.574.5; Mayfield, 100 S.W.3d at 849. Because we hold that Howe did not refuse to submit to a proper request to submit to a blood test, Point Two is dispositive, and we need not address Point One.

Section 577.020 governs implied consent for chemical tests and states that DWI-arrestees are deemed to have consented to having their breath, blood, saliva, or urine chemically tested to determine their blood alcohol content. Section 577.020.1; Davis, 416 S.W.3d at 829. However, Missouri's "implied consent law demands that an arrestee receive certain information prior to being asked to submit to a chemical test to determine blood alcohol content." Simon v. Dir. of Revenue, 509 S.W.3d 135, 138 (Mo. App. S.D. 2016). Specifically, Section 577.041.2 mandates that the officer give the reasons for requesting the test as well as "inform the person that evidence of refusal to take the test may be used against such person." Importantly, "[i]f such person was operating a vehicle prior to such detention, stop, or arrest, he or she shall further be informed that his or her license shall be immediately revoked upon refusal to take the test." Section 577.041.2. Significantly, "[n]o refusal is valid if this statutorily necessary information is not conveyed." Simon, 509 S.W.3d at 138 (internal citation omitted); Mayfield, 100 S.W.3d at 850 (internal citation omitted). Section 302.574.1 authorizes an officer to serve a DWI-arrestee with notice of license revocation on the behalf of the Director for refusing to submit to a

5

chemical test. Section 302.574.1; Davis, 416 S.W.3d at 829. However, "revocation is conditioned upon an officer making a statutorily sufficient request that a driver submit to chemical testing." Allison v. Dir. of Revenue, 525 S.W.3d 127, 130 (Mo. App. W.D. 2017) (quoting Mayfield, 100 S.W.3d at 850).

Here, an absolute prerequisite to any finding under Section 302.574.4 that Howe refused to submit to the blood test is a corresponding finding under Section 577.041.2 that Howe's refusal must have been valid. Sections 302.574.4, 577.041.2; Allison, 525 S.W.3d at 130. Specifically, Howe's refusal may be considered valid only if Trooper Hitt complied with Section 577.041.2 by informing Howe that her refusal to submit to the blood test would result in revocation of her driver's license. Section 577.041.2; Allison, 525 S.W.3d at 130; Mayfield, 100 S.W.3d at 850; see also Mullin v. Director, 556 S.W.3d 626, 631 (Mo. App. W.D. 2018). The Director argues that Trooper Hitt's reading of the AIR implied consent warning for the breath test satisfied Trooper Hitt's statutory obligation, thereby negating any requirement that he repeat the implied consent warning to Howe. Given the specific facts of this case, we disagree.

It is well established that the implied consent warning is statutorily mandated for chemical refusal revocation. Allison, 525 S.W.3d at 130; Simon, 509 S.W.3d at 138; Mayfield, 100 S.W.3d at 850. Here, Trooper Hitt read aloud and manually completed the AIR implied consent warning with respect to the breath test: "To determine the alcohol or drug content of your blood, I am requesting you submit to a chemical test of your breath." Trooper Hitt informed Howe of the consequences of refusing the breath test. Howe complied with Trooper Hitt's request for the breath test. Trooper Hitt later asked Howe to complete a blood draw at a nearby hospital. Notably, Trooper Hitt made no reference whatsoever to the implied consent warning previously given to Howe with the breath test, or to any license revocation

6

consequences that might flow from her refusal to allow a blood test. By not giving Howe the implied consent warning when he asked Howe to submit to blood test, Trooper Hitt did not meet the statutory requirement imposed under Section 577.041.2. Section 577.041.2; Allison v, 525 S.W.3d at 130; Mayfield, 100 S.W.3d at 850.

While Trooper Hitt was permitted by statute to request two chemical tests, only his first request for the breath test complied with the statutory requirements of Section 577.041.2. The Director suggests the trial court erred by directing us to cases discussing Section 577.020.2 and which hold that an officer is authorized under the statute to request an arrestee take up to two chemical tests. Section 577.020.2; see Smock v. Dir. of Revenue, 128 S.W.3d 643, 647 (Mo. App. S.D. 2004) ("The fact that [Missouri's implied consent law] allows an officer to request more than one chemical test of a suspected intoxicated driver is beyond serious dispute."). However, the ability of an officer to request up to two tests is not the issue before us; no party disputes that Trooper Hitt could have requested two tests. The salient issue is whether Trooper Hitt's request for the second test was statutorily sufficient for Howe's refusal to be deemed valid. As explained above, Trooper Hitt's request for the blood test was not statutorily sufficient, thereby negating the validity of any refusal made by Howe.

Missouri courts have recognized three ways an officer may request a second chemical test in compliance with Section 577.041.2: (1) rereading the implied consent warning before the second test; (2) reminding the arrestee of the consequences for refusal before the second test; and (3) requesting both tests when reading the implied consent warning. Regarding the first method, prudent officers consistently reread the implied consent warning before each test—ensuring an informed decision. See e.g., Smith v. Dir. of Revenue, 260 S.W.3d 896, 899 (Mo. App. S.D. 2008) (officer repeated implied consent warning when requesting a second test); Smock, 128

7

S.W.3d at 645 (same); Duffy v. Dir. of Revenue, 966 S.W.2d 372, 375, 381 (Mo. App. W.D. 1998) (same). Courts have also held the purpose of the implied consent warning was fulfilled when the officer reminded the arrestee of the consequences for refusal before the second test. See e.g., Giesler v. Dir. of Revenue, 139 S.W.3d 216, 218 (Mo. App. S.D. 2004) (officer reminded the arrestee of the implied consent warning and that refusal would result in license revocation when requesting a second test); Wilson v. Dir. of Revenue, 35 S.W.3d 923, 927 (Mo. App. W.D. 2001) (same); see also Simon, 509 S.W.3d at 138–39 (noting that merely failing to check a box on the AIR or not reading the implied consent warning verbatim does not make a request statutorily deficient "so long as [the officer] accompanies the request with the requirements of the statute as to the reasons for the request and the possibility of license revocation if the request is refused."). An officer equally complies with Section 577.041.2 by requesting that the driver submit to two chemical tests when issuing the implied consent warning. See e.g., Baldridge v. Dir. of Revenue, 82 S.W.3d 212, 216 (Mo. App. W.D. 2002) (officer requested the driver submit to chemical tests of his breath *and urine*, and that refusal to take the tests would result in license revocation).

None of those accepted scenarios—rereading the implied consent warning for the second test, reminding the arrestee of the consequences for refusal, or requesting two tests at the outset—are presented in the facts of this case. Rather, Trooper Hitt specifically requested Howe submit to a breath test and informed her of the consequences of refusing it. Howe submitted to that test. Only later did Trooper Hitt request Howe complete a second and distinct chemical test to determine her blood alcohol level—a blood draw at a hospital. When making that request, Trooper Hitt made no mention of any consequences for refusing a blood test. Given the relative closeness in time between the two requests, we understand how an individual law enforcement

8

officer may not perceive a practical necessity of restating the implied consent warning after the first requesting consent for only a particular test. We are nevertheless not at liberty to ignore the clear legislative mandate of Section 577.041.2.

Because Trooper Hitt did not give the implied consent warning when requesting Howe submit to a blood test, Howe's refusal was not valid. "The purpose of the [implied consent] warning . . . is to inform an apparently inebriated driver of the consequences that follow a refusal to consent to a chemical test to determine blood alcohol content." Mullin, 556 S.W.3d at 631 (quoting Teson v. Dir. of Revenue, 937 S.W.3d 195, 197 (Mo. banc 1996)). Section 577.041.2 "demands that a law enforcement officer provide an arrestee with information upon which the arrestee may make a voluntary, intentional and informed decision as to whether or not to submit to the chemical test." Teson, 937 S.W.3d at 197. If the officer fails to inform the driver of the consequences of refusal, the refusal is uninformed and invalid, because "[u]ninformed decisions are non-consensual." Mullin, 556 S.W.3d at 631 (quoting Teson, 927 S.W.3d at 197). Here, because Officer Hitt did not provide Howe the implied consent warning in conjunction with the blood test request, Howe's refusal to submit to the blood test was uninformed and cannot be deemed valid. Id. Consequently, because the Director fails to show by a preponderance of the evidence that Howe refused to submit to the blood test—the third element of Section 302.574.4—the circuit court did not err in reinstating Howe's driver's license. Section 302.574.5.

We deny Point Two.

Because our denial of Point Two is dispositive of this appeal, we need not address Point One. Section 302.574.5; Mayfield, 100 S.W.3d at 849.

9

## Conclusion

The judgment of the circuit court is affirmed.

KURT S. ODENWALD, Presiding Judge

Gary M. Gaertner, Jr., J., concurs.
Colleen Dolan, J., concurs.